**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR HOMES MORTGAGE TRUST,<br><br>*Plaintiff*,<br><br>v.<br><br>JOSEPH PERLMUTTER, and ISAAC PERLMUTTER,<br><br>*Defendants*. | CIVIL ACTION NO. 1:26-cv-2089 |

## COMPLAINT

Plaintiff U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for Homes Mortgage Trust ("Trustee" or "Plaintiff"), by and through undersigned counsel, hereby alleges the following causes of action against Defendants Joseph Perlmutter and Isaac Perlmutter (collectively, "Defendants"):

## INTRODUCTION

1. Trustee's claims arise out of the $9,450,000.00 loan (the "Loan") made by the original lender, CoreVest American Finance Lender LLC, a Delaware limited liability company ("Original Lender"), to non-party KPM Investment A 2 LLC ("Borrower"). The Loan's terms are set forth in an October 29, 2021, Loan Agreement by and between Borrower and Original Lender (the "Loan Agreement") and related documents, which contain the obligations of Borrower and the Defendants owed to Original Lender (collectively the "Loan Documents").

2. The collateral securing the Loan is primarily a multi-family residential apartment complex known as the Shannon Woods Apartments (the "Property"), which is located at 6370 Shannon Parkway, Union City, Georgia 30291.

1

3.      In connection with the Loan, Borrower and Original Lender entered into the Loan Agreement and the Loan Documents to secure Original Lender's Loan to Borrower. One of the Loan Documents is the Sponsor Guaranty, dated October 29, 2021, by Defendants in favor of Original Lender (the "Sponsor Guaranty"). Defendants are collectively the "Guarantor" under the Sponsor Guaranty, and Original Lender is the lender. Pursuant to Section 1.1 of the Sponsor Guaranty, Defendants guaranteed the payment and performance of the "Guaranteed Obligations" which are defined in Section 1.2 and include, among other things, payment of the entire Loan and all other obligations and liabilities of Borrower under the Loan Documents ("Obligations").

4.      Borrower breached the Loan Agreement by, among other things, failing to make payments when due, by failing to pay the Obligations in full, by failing to maintain the Property, and by filing the Bankruptcy Case (as defined below). In turn, Defendants breached the Sponsor Guaranty by failing to cause Borrower to cure its breaches of the Loan Agreement and by failing to pay and perform the Guaranteed Obligations. Trustee brings this action against Defendants, as the Guarantor for the Loan, for breach of the Sponsor Guaranty by failing to pay and perform the Guaranteed Obligations, including failing to pay the Obligations in full.

## PARTIES, JURISDICTION AND VENUE

5.      Plaintiff Trustee is a national banking association with its designated main office located in Wilmington, Delaware. As a national bank, Trustee is a citizen of Delaware where its main office is located. Trustee acts as the trustee for the beneficiaries of the trust known as Homes Mortgage Trust.

6.      Non-party CoreVest Purchaser 2, LLC, a Delaware limited liability company ("Asset Manager") is the asset manager for the Trustee with respect to the Loan and Trustee acts by and through Asset Manager with respect to the Loan. As such, Asset Manager services and manages the Loan and enforces the terms of the Loan Documents, including the Sponsor Guaranty.

7. Defendant Isaac Perlmutter is an individual resident of the State of New York and is a signatory of the Sponsor Guaranty currently held by Trustee.

8. Defendant Joseph Perlmutter is an individual resident of the State of New York and is a signatory of the Sponsor Guaranty currently held by Trustee.

9. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10. Venue is proper in this Court pursuant to Section 5.3 of the Sponsor Guaranty and 28 U.S.C. § 1391(c).

**FACTS COMMON TO ALL COUNTS**

**A.** **Borrower and Original Lender Executed the Loan Agreement, the Promissory Note and the other Loan Documents.**

11. On or about October 29, 2021, Original Lender made the Loan to Borrower in the original principal amount of $9,450,000.00, as evidenced by that certain Promissory Note dated October 29, 2021, executed by Borrower and payable to Original Lender (the "Note"), as such Note was endorsed and assigned by Original Lender to Asset Manager pursuant to that certain Note Allonge dated as of October 29, 2021 and attached to the Note, as such Note was further endorsed and assigned by Asset Manager to CAF Borrower GS LLC, a Delaware limited liability company ("CAF Borrower") pursuant to that certain Note Allonge dated as of October 29, 2021 and attached to the Note, and as such Note was further endorsed and assigned by CAF Borrower to Plaintiff pursuant to that certain Note Allonge, dated as of December 20, 2023 and attached to the Note. A true and correct copy of Note is attached hereto as **Exhibit "A".**

12. The Loan is evidenced, in part, by the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "B"**.

3

13.     The Loan is secured by, among other things, that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Security Deed") made as of October 29, 2021, by Borrower to and in favor of Original Lender, filed and recorded November 4, 2021, in Deed Book 64770, Page 174, with the Clerk of the Superior Court of Fulton County, Georgia (the "Fulton County Records"), which Security Deed encumbers, among other things, the Property. A true and correct copy of the Security Deed is attached hereto as **Exhibit "C"**.

14.     The Security Deed was endorsed, assigned, sold, transferred and delivered by Original Lender to Asset Manager pursuant to that certain Assignment of Security Instrument, dated as of October 29, 2021, filed and recorded December 13, 2021, in Deed Book 64972, Page 105, in the Fulton County Records (the "Assignment No. 1"). A true and correct copy of Assignment No. 1 is attached hereto as **Exhibit "D"**.

15.     The Security Deed was further endorsed, assigned, sold, transferred and delivered by Asset Manager to CAF Borrower pursuant to that certain Assignment of Security Instrument, dated as of October 29, 2021, filed and recorded December 13, 2021, in Deed Book 64972, Page 115, in the Fulton County Records (the "Assignment No. 2"). A true and correct copy of Assignment No. 2 is attached hereto as **Exhibit "E"**.

16.     The Security Deed was further endorsed, assigned, sold, transferred and delivered by CAF Borrower to Plaintiff pursuant to that certain Assignment of Security Instrument, dated as of December 20, 2023, filed and recorded December 20, 2023, in Deed Book 67452, Page 559, in the Fulton County Records (the "Assignment No. 3"). A true and correct copy of Assignment No. 3 is attached hereto as **Exhibit "F"**.

17.     The Loan is additionally secured by, among other things, that certain Pledgor Guaranty (the "Pledgor Guaranty"), dated as of October 29, 2021, made by and between KPM Investment B 2 LLC, a Delaware limited liability company, and Original Lender. A true and correct copy of the Pledgor Guaranty is attached hereto as **Exhibit "G"**.

18.     The Loan is additionally secured by, among other things, the Sponsor Guaranty. A true and correct copy of the Sponsor Guaranty is attached hereto as **Exhibit "H"**.

19.     Plaintiff is the current owner and holder of all of the legal and equitable title to and interests in the Loan, the Note, the Loan Agreement, the Security Instrument, the Pledgor Guaranty, the Sponsor Guaranty, and all other Loan Documents, instruments and agreements securing and evidencing the Loan.

20.     The Loan Agreement imposes payment obligations on Borrower. For example, Sections 2.2 (d) and (f) of the Loan Agreement require Borrower to pay the Trustee "a monthly payment of principal and interest equal to the Monthly Debt Service Payment"[1] and pay to Trustee "on the Maturity Date the remaining Principal Indebtedness, all accrued and unpaid interest and all other amounts due under the Loan Documents." **Ex. B, § 2.2 (d) and (f).**

21.     Each failure to make these and other required payments when due – including for any principal, interest, yield maintenance premiums, or reserve deposits owed – constitutes an "Event of Default" under Section 8.1 of the Loan Agreement. **Ex. B, § 2.2 (d) and (f), § 8.1**.

---

[1] The term "**Monthly Debt Service Payment**" as defined in the Loan Agreement means "a constant monthly payment of principal and interest sufficient to amortize the Loan over the Principal Amortization Period at the Interest Rate, as determined by Lender, which determination shall be final and binding on Borrower absent manifest error." The amount due for each **Monthly Debt Service Payment** is $49,209.48, to be paid on or before the 9th day of each month.

22.     An Event of Default also results if an "Event of Bankruptcy shall occur with respect to any Restricted Party."[2] **Ex. B, §§ 8.1 (d)**.

23.     Borrower was also subject to obligations beyond payments and Events of Bankruptcy that if breached constituted an Event of Default. One such obligation, set forth in Section 6.2 of the Loan Agreement, obliged Borrower to maintain the Property. **Ex. B, § 6.2.** Section 6.2, in part, states as follows:

> Borrower shall cause each property *to **be maintained in good and safe working order and repair***, reasonable wear and tear excepted, and in keeping with the condition and repair of properties of a similar use, value, age, nature and construction and from time to time make, or cause to be made, all reasonably necessary repairs, renewals, replacements, betterments and improvements thereto. . .

*Id.* **§ 6.2** (emphasis added).

24.     Borrower also has the obligation under Section 6.10 of the Loan Agreement to "give [Plaintiff] prompt notice (containing reasonable detail) of (i) any material change in the financial or physical condition of any Property . . . . [and] (vi) any Default or Event of Default."

**Ex. B, § 6.10.**

---

[2] The term "**Event of Bankruptcy**" as defined in the Loan Agreement means "with respect to any Person: (i) such Person shall fail generally to pay, or admit in writing it inability to pay, its debts as they come due, or shall make a general assignment for the benefit of creditors; (ii) any case or other proceeding shall be instituted by or with the consent or acquiescence of such Person seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, reorganization, debt arrangement, dissolution, winding up, or composition or readjustment of debts of it or its debts, or the appointment of a trustee, receiver, custodian, liquidator, assignee, sequestrator or the like for such Person or all or substantially all of its assets, or any similar action, or such Person shall take any corporate, partnership, limited partnership or limited liability company action to authorize any of such actions; or (iii) a case or other proceeding described in the foregoing clause (ii) shall be commenced, without the application, consent or acquiescence of such Person, and (A) such case or proceeding shall continue undismissed, or unstayed and in effect, for a period of sixty (60) consecutive days or (B) an order for relief in respect of such Person shall be entered in such case or proceeding or a decree or order granting such other requested relief shall be entered." The term "**Restricted Parties**" as defined in the Loan Agreement means "collectively, Borrower, Pledgor and Sponsor, each of which shall individually be a "Restricted Party"."

25.     Moreover, Section 7.14 provides that "Borrower shall not commit or permit any Waste on any of the Properties . . . (and Borrower shall promptly correct any such actions of which Borrower becomes aware)."[3] **Ex. B, § 7.14**.

26.     In addition, Section 7.1 provides that "Borrower shall not permit or suffer the existence of any Lien on any of its assets, other than Permitted Encumbrances. Borrower will cause Pledgor not to permit or suffer the existence of any Lien on any of the Collateral owned by Pledgor." **Ex. B, § 7.14**.

27.     Unless promptly cured, an Event of Default generally entitles Plaintiff to one or more of the remedies made available under Section 8.2 of the Loan Agreement, including but not limited to acceleration of the Loan's maturity, foreclosure and/or sale of the Property, and the right to seek specific performance or injunctive relief. **Ex. B, §§ 8.2 (a) – (g)**.

**B.      Defendants Executed the Sponsor Guaranty.**

28.     The Sponsor Guaranty (**Ex. H**), as executed by and between Defendants as the Guarantor and Original Lender (and subsequently assigned to Plaintiff), is a valid and enforceable contract.

29.     Guarantor is "a direct or indirect owner of an equity interest in Borrower," and thus agreed to execute the Sponsor Guaranty in order "to induce Lender to make the Loan." **Ex. H, Recitals**.

30.     Section 1.1 of the Sponsor Guaranty provides that Defendants, as the Guarantor, "irrevocably and unconditionally guarantees the payment and performance of the Guaranteed Obligations. . . as and when the same shall be due and payable, whether by lapse of time, by

---

[3] The term "**Waste**" as defined in the Loan Agreement means "any material abuse or destructive use (whether by action or inaction) of the Property."

acceleration of maturity or otherwise." Moreover, Guarantor further "irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor." **Ex. H, § 1.1**.

31.     The term "Guaranteed Obligations," is defined in Section 1.2(a) of the Sponsor Guaranty to include, among other things, the following:

> (a)     any actual out-of-pocket loss, actual damages, actual out-of-pocket cost or expense or other liability, claim or other obligation to the extent actually incurred by Lender (including reasonable attorneys' fees, costs, and out-of-pocket expenses) arising out of or in connection with the acts or omissions of [Borrower] . . . in each case arising with respect to any of the following:
>
> . . .
>
> (ii)     wrongful removal or destruction of any Property or damage to any Property caused by willful misconduct or gross negligence of a [Defendant];
>
> (iii)     any Waste of any Property;
>
> . . .
>
> (vii) failure to pay charges for labor or materials or Other Charges that can create Liens on any portion of any Property;
>
> (b)     the entire amount of the Obligations upon the occurrence of any of the following events:[4]
>
> (i)     Borrower filing a voluntary petition or instituting any other proceeding seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, reorganization, debt arrangement, dissolution, winding up, or composition or readjustment of debts of it or its debts, under the Bankruptcy Code;

---

[4] The term "**Obligations**" as defined in the Loan Agreement means "collectively, each and all of the obligations of the Restricted Parties under the Loan Document, including Borrower's obligations for payment of the Indebtedness and payment of all operating expenses necessary for the operation of the Properties and Capital Expenditures necessary to maintain the Properties in accordance with this Agreement."

**Ex. H, § 1.2(a) and (b)**.

32.     Section 1.5 of the Sponsor Guaranty further provides that "[i]f all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, within five (5) days of written demand therefor by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender[.]" **Ex. H, § 1.5**.

**C.      Borrower Caused Events of Default Under the Loan Agreement That Triggered Full Recourse Against the Defendants and Other Loss for Which Defendants Are Liable.**

33.     Under the Sponsor Guaranty, Defendants were responsible and liable for numerous continuing defaults and Events of Default (as defined in the Loan Agreement) committed by Borrower under the Loan Documents, of both monetary and non-monetary nature, including, but not limited to, the failure to pay the Obligations in full beginning on August 5, 2024 and thereafter, failure to prevent Liens to be filed against the Property, and failure to properly manage and maintain the Property in good and safe condition and repair.

34.     Because Borrower failed to pay the amounts due and owing under the Loan Agreement when due and owing, by letter dated July 3, 2024, Plaintiff, acting by and through its attorneys, notified Borrower that (i) the Events of Default were continuing, (ii) accelerated the Loan and demand was thereby made for immediate payment in full of the entire amount of the outstanding Obligations, (iii) Borrower's license to collect the rents and other sums granted under the Loan Documents was automatically terminated, (iv) Plaintiff was commencing a foreclosure action and provided Borrower with a copy of the Notice of Sale Under Power which was to be published in the appropriate legal organ for Fulton County, Georgia during the month of July 2024

9

in anticipation of an August 6, 2024 foreclosure date (the "July 3 Notice"). A true and correct copy of the July 3 Notice is attached hereto as **Exhibit "I".**

35.     On August 5, 2024, Borrower filed a Voluntary Petition for Non-Individuals Filing for Bankruptcy (the "Chapter 11 Filing") with the United States Bankruptcy Court Northern District of Georgia (the "Bankruptcy Court") (Case No. 24-58139) (the "Bankruptcy Case") and, thus, Plaintiff was automatically stayed from foreclosing upon the Property on August 6, 2024. A true and correct copy of the Chapter 11 Filing is attached hereto as **Exhibit "J".**

36.     On January 24, 2025, U.S. Bankruptcy Court Judge Paul W. Bonapfel executed an Order Dismissing Debtors' Chapter 11 Case, which dismissed the Bankruptcy Case (the "Order"). A true and correct copy of the Order is attached hereto as **Exhibit "K".**

37.     The Bankruptcy Case triggered full recourse under the terms of the Loan Documents and resulted in the Defendants becoming personally liable for the full amount of the outstanding Obligations. **Ex. H § 1.2(b)(i).**

38.     Because Defendants still failed to cure the pending Events of Default which were continuing and not waived by Plaintiff, Plaintiff, acting by and through its attorneys, notified Borrower and Defendants that (i) due to Borrower filing the Bankruptcy Case full recourse liability was triggered under the terms of the Loan Documents, which resulted in the Defendants becoming personally liable for the full amount of the outstanding Obligations, (ii) the Events of Default were still continuing, (iii) Plaintiff accelerated the Loan and demand was thereby made for immediate payment in full of the entire amount of the outstanding Obligations, (iv) Borrower's license to collect the rents and other sums granted under the Loan Documents was automatically terminated, and (v) Plaintiff was again commencing a foreclosure action and provided Borrower and Defendants with a copy of the Notice of Sale Under Power which was to be published in the

10

appropriate legal organ for Fulton County, Georgia during the month of February 2025 in anticipation of a March 4, 2025 foreclosure date (the "January 30 Notice"). A true and correct copy of the January 30 Notice is attached hereto as **Exhibit "L".**

39.    In response to Borrower's Events of Default, as described above, Defendants, as the Guarantor, breached their monetary funding obligations under the Sponsor Guaranty. The Sponsor Guaranty requires that "[i]f all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, within five (5) days of written demand therefor by [Plaintiff], and without . . . protest . . . pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender[.]" **Ex. H § 1.5;** *see also* **§§ 1.1, 1.2(a), and 4.1**. The amounts due were not paid upon demand by Plaintiff.

**D.    <u>Defendants Breached the Sponsor Guaranty by Allowing Liens to be Filed against the Property</u>**

40.    In addition, Borrower permitted one or more Liens to be attached to the Property, specifically a Lien filed by the City of Union City in the amount of $152,728.86, filed on March 27, 2023 in Lien Book 5622, Page 470, Records of Fulton County, Georgia; and a Lien filed by the City of Union City in the amount of $152,728.86, filed on March 31, 2023 in Lien Book 5629, Page 588, Records of Fulton County, Georgia.

41.    Borrower covenanted to "pay and discharge all Taxes and Other Charges levied upon it, its income and its assets as and when such Taxes and Other Charges are due and payable." Ex. B § 6.4.

42.    Borrower also covenanted not to "permit or suffer the existence of any Lien on any of its assets, other than Permitted Encumbrances." Ex. B § 7.1.

11

43.    Nonetheless, Borrower failed to pay Other Charges[5] that created Liens on the Property, thus allowing a Lien to be filed against the Property. This failure constituted a breach of the Loan Agreement (Ex. B §§ 6.4 and 7.1) and of the Sponsor Guaranty (Ex. H, § 1.2(a)(vii)).

**E.    Defendants Breached the Sponsor Guaranty by Allowing Waste of the Property.**

44.    The Loan Documents imposed obligations related to the management and maintenance of the Property.

45.    Under the Loan Agreement, Borrower had a duty to "cause each Property to be maintained in good and safe working order and repair" (Ex. B § 6.2); to "ensure that the Properties are managed in a commercially reasonable manner" (*id.* § 6.9 (d)); and to "give [Plaintiff] prompt notice . . . [of] any material change in the financial or physical condition of any Property" (*id.* § 6.10).

46.    Borrower breached the Loan Documents by failing to maintain the Property in good and safe working order, by failing to manage the Property in a commercially reasonable manner and allowing Waste. True and correct copies of photographs depicting the poor condition of the Property as of February 25, 2025, are attached hereto as **Exhibit "M"**.

47.    Defendants, as the Guarantor, did not prevent the deterioration and disrepair of the Property, did not notice or inform Trustee of the deteriorated state of the Property, and never remedied the violations when Borrower was charged with managing the Property. Accordingly, Defendants have breached the Sponsor Guaranty on this additional ground. *See* **Ex. H, § 1.1** ("Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor"); *see also id.,* § 1.2 (a)(iii) (identifying "any Waste of any Property" as violations of the "Guaranteed Obligations" under the Loan Documents).

---

[5] "Other Charges" means (i) HOA Fees and (ii) any other charges levied or assessed or imposed against a Property, or any part thereof, other than Taxes.

**F.**    **Trustee Purchased the Property Through a Non-Judicial Foreclosure and Sale That Has Been Confirmed by the Georgia State Court.**

48.    Georgia is a non-judicial foreclosure state allowing a lender to accelerate a loan, foreclose and sell the property in accordance with statutory procedures. *See* O.C.G.A. § 44-14-161. Georgia allows a lender to file claims against guarantors if the foreclosed property is sold according to statutory procedures and the sale price is less than the debt owed.

49.    The Security Deed contained provisions for remedies on default which authorized the Plaintiff to conduct a foreclosure sale of the Property upon the occurrence of an Event of Default (the "Power of Sale Provision").

50.    Pursuant to the Power of Sale Provision, and in accordance with Georgia law, Plaintiff advertised the foreclosure of the Property in the *South Fulton Neighbor*, the newspaper of general circulation published in Fulton County, Georgia in which Fulton County Sheriff's advertisements are published. The advertisement ran for four (4) consecutive weeks, with the dates of publication being February 5, 2025, February 12, 2025, February 19, 2025, and February 26, 2025. A true and correct copy of the Affidavit of Publication referencing the Notice of Sale Under Power that was published (the "Notice of Sale") is attached hereto as **Exhibit "N".**

51.    The Notice of Sale provided notice to Defendants and to the general public that the foreclosure sale at issue would take place before the Fulton County, Georgia courthouse on the first Tuesday in March 2025.

52.    On the first Tuesday of March 2025, that being March 4, 2025, pursuant to the Notice of Sale and in accordance with the Power of Sale Provision and Georgia law, Plaintiff offered the Property for sale before the Courthouse steps in Fulton County, Georgia, during the legal hours of sale at auction to the highest bidder for cash (the "Foreclosure Sale").

13

53.     At said Foreclosure Sale the Property that is real property under the law of the State of Georgia (the "Real Property") was knocked down and sold to the highest bidder, which was Plaintiff, for a credit bid of Seven Million Two Hundred Fifty Thousand Dollars ($7,250,000.00) (the "Real Property Credit Bid"), during the legal hours for such sale.

54.     At said Foreclosure Sale the Property that is personal property under the law of the State of Georgia (the "Personalty") was knocked down and sold to the highest and sole bidder, Plaintiff, for a credit bid of Ten Thousand Dollars ($10,000.00) (the "Personalty Credit Bid", and together with the Real Property Credit Bid, the "Credit Bid"), during the legal hours for such sale.

55.     Immediately following the Foreclosure Sale, the Real Property was conveyed to Plaintiff pursuant to that certain Deed Under Power of Sale (the "Plaintiff Deed"), effective as of March 4, 2025, filed and recorded on March 4, 2025, in Deed Book 68707, beginning at Page 616, in the Fulton County Records. A true and correct copy of the Plaintiff Deed is attached hereto as **Exhibit "O".**

56.     Also following the Foreclosure Sale, the Personalty was conveyed to Plaintiff pursuant to that certain Bill of Sale (the "Plaintiff Bill of Sale"), dated March 4, 2025. A true and correct copy of the Plaintiff Bill of Sale is attached hereto as **Exhibit "P"**.

57.     The Credit Bid of $7,260,000.00 for the Real Property and the Personalty was equal to or greater than the true market value of the Real Property and the Personalty as of the date of the Sale.

58.     The Foreclosure Sale was properly noticed, advertised, and was regular in all other respects.

59.     The Foreclosure Sale was properly conducted in accordance with Georgia law, including but not limited to O.C.G.A. § 9-13-140 *et seq.*

14

60.    Trustee timely filed a Report of Sale on March 21, 2025. Judge Barwick of the Fulton County Superior Court issued an Order confirming that Trustee properly conducted the foreclosure and sale in accordance with Georgia law, and that the sales price of $7,250,000.00 represented the true value of the Property on the date of the sale. *See* **Exhibit "Q"** (Order confirming the sale).

61.    The sales price of $7,250,000.00 for the Real Property and $10,000.00 for the Personalty is less than the outstanding balance of the Loan, plus unpaid interest, late fees and costs, which at the time of foreclosure totaled approximately $11,530,570.67. Accordingly, the total amount of the deficiency is not less than $4,270,570.67.

**COUNT I**
**Breach of Contract -- Sponsor Guaranty – Full Recourse**

62.    Plaintiff hereby incorporates by reference all allegations contained in Paragraphs 1 to 61 above, as if fully restated herein.

63.    On October 29, 2021, Defendants executed the Sponsor Guaranty. The Sponsor Guaranty is, and at all times relevant to this action was, a valid and enforceable contract.

64.    Pursuant to the terms of the Sponsor Guaranty, Defendants agreed that a bankruptcy filing by Borrower triggered full recourse under the terms of the Loan Documents and resulted in the Defendants becoming personally liable for the full amount of the outstanding Obligations.

65.    In addition, Defendants acknowledged and agreed that "if Borrower fails to pay any Guaranteed Obligation when and as due . . . [Defendants] agrees to promptly pay the amount of such unpaid Guaranteed Obligations to [Plaintiff] in cash." Ex. H § 4.1(a); *see also id.* § 1.2 (a) (identifying "the due and prompt payment" of all principal, interest, and other amounts payable under the Loan Documents as a "Guaranteed Obligation").

15

66.     Defendants breached the Sponsor Guaranty due to Defendants' failure to pay the full amount of the outstanding Obligations upon the bankruptcy filing of Borrower. Because Defendants guaranteed Borrower's complete and timely performance under the Loan Documents, Defendants, as Guarantor, breached the Sponsor Guaranty on or about the same dates Borrower breached the Loan Agreement.

67.     Specifically, Defendants breached the Sponsor Guaranty by refusing to pay the Obligations in full despite Plaintiff's demands to do so.

68.     Defendants' performance under the Sponsor Guaranty was not excused, frustrated or made impossible.

69.     Pursuant to the Default Notice provided to Defendants, Plaintiff accelerated the Maturity Date of the Loan making the Loan and all amounts due under the Loan Documents immediately due and payable.

70.     As a direct and proximate result of Defendants' breach of the Sponsor Guaranty, Plaintiff has suffered, and continues to suffer, damages in an amount to be proven at trial, but in no instance less than the full amount of Debt currently owed of $4,270,570.67.

### COUNT II
### Breach of Contract -- Sponsor Guaranty – Waste

71.     Plaintiff hereby incorporates by reference all allegations contained in Paragraphs 1 to 61 above, as if fully restated herein.

72.     Defendants further breached the Sponsor Guaranty by failing to pay for damage caused by Borrower's failure to properly manage and maintain the Property in good and safe condition and repair and allowing Waste.

16

73.    As a direct and proximate result of Defendants' breach of the Sponsor Guaranty, Plaintiff has suffered, and continues to suffer, damages related to Waste in an amount to be proven at trial, currently estimated to be between $2,500,000 and $3,000,000.

## COUNT III
### Breach of Contract -- Sponsor Guaranty – Liens

74.    Plaintiff hereby incorporates by reference all allegations contained in Paragraphs 1 to 61 above, as if fully restated herein.

75.    Defendants further breached the Sponsor Guaranty by failing to pay Other Charges that created Liens on the Property, thus allowing one or more Liens to be filed against the Property.

76.    As a direct and proximate result of Defendants' breach of the Sponsor Guaranty, Plaintiff has suffered, and continues to suffer, damages in an amount to be proven at trial no less than $152,728.86.

## COUNT IV
### Attorneys' Fees

77.    Plaintiff hereby incorporates by reference all allegations contained in Paragraphs 1 to 61 above, as if fully restated herein.

78.    Section 1.8 of the Sponsor Guaranty provides that Defendants are liable for the payment of reasonable attorneys' fees, court costs and other expenses incurred by the Trustee in the enforcement and preservation of its rights under the Sponsor Guaranty. Consequently, Defendants are liable for the Trustee's attorneys' fees and other costs incurred in the enforcement of its rights as set forth in the Sponsor Guaranty. The amount of costs incurred in this action will be proved at trial.

79.    Section 1.2 of the Sponsor Guaranty provides that Defendants are liable for the payment of reasonable attorneys' fees, court costs and other expenses incurred by the Trustee in

17

the enforcement and preservation of its rights under the Loan Documents against Borrower and other "Designated Parties," including Defendants. Trustee has incurred attorneys' fees and costs in the non-judicial foreclosure sale and sale confirmation proceeding in the Georgia state court of approximately $426,084.82.

80.     Defendants are liable for the costs described in the above paragraphs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.     The Court enters judgment against the Defendants, as Guarantor, on Count I in the full amount of Debt currently owed.

2.     In the alternative, the Court enters judgment against the Defendants, as Guarantor, on Count II in an amount to be proven at trial.

3.     In the alternative, the Court enters judgment against the Defendants, as Guarantor, on Count III in an amount to be proven at trial no less than $152,728.86.

4.     The Court enters judgment against all Defendants for attorneys' fees, court costs and other expenses incurred by Plaintiff as requested in Count IV.

5.     Costs of this action are to be taxed against Defendants.

6.     The Court enters such other and further relief as is just and proper.

Dated: New York, New York
       March 13, 2026

KILPATRICK TOWNSEND &
STOCKTON LLP
By: */s/ Evan S. Nadel*
Evan S. Nadel
3 Times Square
New York, NY 10036
Telephone: (212) 775-8862

18

enadel@ktslaw.com

*Attorney for Plaintiff*