# EXHIBIT C

Deed Book 64770 Page 174
Filed and Recorded 11/04/2021 03:13:00 PM
2021-0337519
Georgia Intangible Tax Paid $25,000.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 7403869157
7067927936

PREPARED BY:
CoreVest American Finance Lender LLC
c/o Michael Tran
4 Park Plaza, Suite 900
Irvine, CA  92614

AFTER RECORDING RETURN TO:
OS National, LLC
3097 Satellite Blvd., Suite 400
Duluth, GA 30096
(770) 497-9100
Parcel ID: 09F-1504-0078-054-8 & 09F-1504-0078-055-5

**DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

**KPM INVESTMENT A 2 LLC**
(Grantor)

to and in favor of

**COREVEST AMERICAN FINANCE LENDER LLC**
(Grantee)

| | |
|---|---|
| Dated: | As of October 29, 2021 |
| County: | Fulton |
| State: | Georgia |

**FOR PURPOSES OF O.C.G.A. §11-9-334(H), THIS DEED TO SECURE DEBT IS A "CONSTRUCTION MORTGAGE".**

**ATTENTION CLERK OF THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA: THIS SECURITY DEED IS INTENDED TO BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING PURSUANT TO SECTION 11-9-502 OF THE OFFICIAL CODE OF GEORGIA ANNOTATED. PORTIONS OF THE PROPERTY (HEREINAFTER DEFINED) ARE OR ARE TO BECOME FIXTURES RELATED TO THE LAND DESCRIBED IN EXHIBIT A HERETO. THIS SECURITY DEED IS TO BE FILED FOR RECORD IN THE RECORDS OF FULTON COUNTY, GEORGIA AND SHOULD BE INDEXED AS BOTH A DEED TO SECURE DEBT AND AS A FINANCING STATEMENT COVERING FIXTURES. THE NAMES AND ADDRESSES OF GRANTOR (DEBTOR) AND GRANTEE (SECURED PARTY) AND A STATEMENT INDICATING THE TYPES, OR DESCRIBING THE ITEMS, OF COLLATERAL, ARE SPECIFIED IN SECTION 1.04 OF THIS SECURITY DEED, IN COMPLIANCE WITH**

THE REQUIREMENTS OF THE UNIFORM COMMERCIAL CODE, AS ENACTED IN THE STATE OF GEORGIA.

Deed to Secure Debt (Georgia)

## DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS **DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING** (this *"Security Deed"*) is made as of this 29th day of October, 2021, by **KPM INVESTMENT A 2 LLC**, a Delaware limited liability company, as grantor, having an address at BMGA Properties, 123 Taaffe Place, Brooklyn, New York 11211, Attention: Joseph Perlmutter (*"Grantor"*), to and in favor of **COREVEST AMERICAN FINANCE LENDER LLC**, a Delaware limited liability company, as lender and grantee, having an address at CoreVest American Finance Lender LLC, 4 Park Plaza, Suite 900, Irvine, CA 92614, Attention:  Head of Term Lending (together with its successors and/or assigns, *"Grantee"*).

### W I T N E S S E T H:

A.    This Security Deed is given to secure a loan (the *"Loan"*) in the principal sum of Nine Million Four Hundred Fifty Thousand and No/100ths Dollars ($9,450,000.00) or so much thereof as may be advanced pursuant to that certain Loan Agreement dated as of the date hereof by and between Grantor and Grantee (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the *"Loan Agreement"*), and evidenced by that certain Promissory Note dated the date hereof made by Grantor to Grantee (such Promissory Note, together with all extensions, renewals, replacements, restatements or modifications thereof, being hereinafter referred to as the *"Note"*) and having a final maturity date to occur on or before November 9, 2031, after exercise of all extension options.  Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement.

B.    Grantor desires to secure the payment of the outstanding principal amount of the Loan together with all interest accrued and unpaid thereon and all other sums due to Grantee in respect of the Loan under the Note, the Loan Agreement and the other Loan Documents (the *"Debt"*) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents.

C.    This Security Deed is given pursuant to the Loan Agreement, and payment, fulfillment and performance by Grantor of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Deed.

NOW THEREFORE, in consideration of the making of the Loan by Grantee and the covenants, agreements, representations and warranties set forth in this Security Deed and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by Grantor:

## ARTICLE I.

## GRANTS OF SECURITY

**Section 1.01    Property Conveyed**.  Grantor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey unto Grantee and its successors and assigns, WITH POWER OF SALE, and grants Grantee security title to, all right, title, interest and estate of Grantor now owned, or hereafter acquired by Grantor, in and to the following (collectively, the "*Property*"):

(a)    Land.  The real property identified on **Schedule 1** attached hereto and made a part hereof and more particularly described in **Exhibit A**, attached hereto and made a part hereof (collectively, the "*Land*");

(b)    Additional Land.  All additional lands, estates and development rights hereafter acquired by Grantor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed to secure debt or otherwise be expressly made subject to the lien and security title of this Security Deed;

(c)    Improvements.    The  buildings,  structures,  fixtures,  additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "*Improvements*");

(d)    Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Grantor of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)    Equipment.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Grantor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Grantor and any and all additions, substitutions and replacements of any of the foregoing),

2

Deed to Secure Debt (Georgia)

together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the *"Equipment"*). Notwithstanding the foregoing, Equipment shall not include any property belonging to Tenants under Leases except to the extent that Grantor shall have any right or interest therein;

(f)     Fixtures.    All Equipment now owned, or the ownership of which is hereafter acquired, by Grantor which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, lighting, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Grantor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the *"Fixtures"*). Notwithstanding the foregoing, "Fixtures" shall not include any property which Tenants are entitled to remove pursuant to Leases except to the extent that Grantor shall have any right or interest therein;

(g)     Personal Property.    All furniture, furnishings, objects of art, machinery, goods, tools, equipment, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code), other than Fixtures, which are now or hereafter owned by Grantor and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the *"Personal Property"*), and the right, title and interest of Grantor in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the *"Uniform Commercial Code"*), superior in lien to the lien, security title and security interest of this Security Deed, and all proceeds and products of any of the above.  Notwithstanding the foregoing, Personal Property shall not include any property belonging to Tenants under Leases except to the extent that Grantor shall have any right or interest therein;

(h)     Leases and Rents.    (i) All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the

3

Deed to Secure Debt (Georgia)

Improvements, and every modification, amendment, extension, renewal, replacement, or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Grantor of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the *"Bankruptcy Code"*) (collectively, the *"Leases"*); (ii) all right, title and interest of Grantor, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code (collectively, the *"Rents"*); (iii) all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment and performance of the Obligations, including the payment of the Debt; (iv) all of Grantor's right, title and interest in, and claims under, any and all lease guaranties, letters of credit and any other credit support (individually, a *"Lease Guaranty"*, and collectively, the *"Lease Guaranties"*) given by any guarantor in connection with any of the Leases or leasing commissions (individually, a *"Lease Guarantor"*, and collectively, the *"Lease Guarantors"*) to Grantor; (v) all rights, powers, privileges, options and other benefits of Grantor as the lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including, without limitation, the immediate and continuing right to make claims for, and to receive, collect and acknowledge receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Grantor or any lessor is or may become entitled to do under any of the Leases or Lease Guaranties; (vi) the right, subject to the provisions of the Loan Agreement, at Grantee's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents; (vii) during the continuance of an Event of Default, Grantor's irrevocable power of attorney, coupled with an interest, to take any or all other actions designated by Grantee for the proper management and preservation of the Land and Improvements; and (viii) any and all other rights of Grantor in and to the items set forth in subsections (i) through (vii) above, and all amendments, modifications, replacements, renewals and substitutions thereof;

(i)    Condemnation Awards.    All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)    Insurance Proceeds.    All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Property;

4

Deed to Secure Debt (Georgia)

(k)    Tax Certiorari.  All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges assessed against the Property as a result of tax certiorari proceedings or any other applications or proceedings for reduction;

(l)    Rights.  The right, in the name and on behalf of Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Grantee in the Property;

(m)    Agreements.    All agreements, contracts, certificates, instruments, franchises, management agreements, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Grantor therein and thereunder, including, without limitation, the right, upon the happening and during the continuance of any Event of Default, to receive and collect any sums payable to Grantor thereunder;

(n)    Intellectual Property.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)    Accounts.  All reserves, escrows and deposit accounts maintained by Grantor with respect to the Property, together with all deposits or wire transfers made to such accounts, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time, and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof, excluding the following (the "*Account Collateral*"): all reserves, escrows and deposit accounts in which a security interest is granted to Grantee pursuant to the Loan Agreement and all amounts at any time contained therein and the proceeds thereof;

(p)    Uniform Commercial Code Property.  All documents, instruments, chattel paper and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, relating to the Property;

(q)    Minerals.  All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above Land;

(r)    All Other Assets.  All other accounts, general intangibles, instruments, investment property, documents, chattel paper, goods, moneys, letters of credit, letter of credit rights, certificates of deposit, deposit accounts, escrow deposits, commercial tort claims, oil, gas and minerals,  and all other property and interests in property of Grantor, whether tangible or intangible, and including without limitation all of Grantor's claims and rights to the payment of damages arising under the Bankruptcy Code ("*Bankruptcy Claims*"), excluding the Account Collateral;

(s)    Proceeds.  All proceeds of, and proceeds of any sale of, any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether in cash or in liquidation or other claims, or otherwise; and

5

Deed to Secure Debt (Georgia)

(t)    Other Rights.  Any and all other rights of Grantor in and to the items set forth in Subsections (a) through (s) above.

AND, without limiting any of the other provisions of this Security Deed, to the extent permitted by applicable law, Grantor expressly grants to Grantee, as secured party, a security interest in all of Grantor's right, title and interest in and to that portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "*Real Property*") appropriated to the use thereof and, whether affixed or annexed to the Land or not, shall for the purposes of this Security Deed be deemed conclusively to be real estate and conveyed hereby.

It is hereby acknowledged and agreed that Grantor has granted to Grantee a security interest in the Account Collateral pursuant to the Loan Agreement.  Notwithstanding anything to the contrary contained herein, Grantee's security interest in the Account Collateral shall be governed by the Loan Agreement and not this Security Deed.

### Section 1.02    Assignment of Rents.

(a)    Grantor hereby absolutely and unconditionally assigns to Grantee all of Grantor's right, title and interest in and to all current and future Leases, Rents, Lease Guaranties and Bankruptcy Claims; it being intended by Grantor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to any applicable deposit account control agreement, the Loan Agreement and the terms of this Security Deed, Grantee grants to Grantor, so long as no Event of Default has occurred and is continuing, a revocable license to (and Grantor shall have the right to) collect, receive, use and enjoy the Rents, as well as any sums due under the Lease Guaranties.  Grantor shall hold the Rents, as well as all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Grantee for use in the payment of such sums.  This assignment is effective without any further or supplemental assignment documents.

(b)    Following the occurrence and during the continuance of an Event of Default, or during such other times as may be provided for in the Loan Agreement, Grantor hereby authorizes and directs the lessees named in the Leases, any other future lessees or occupants of the Real Property and all Lease Guarantors to pay over to Grantee or to such other party as Grantee directs all Rents and all sums due under any Lease Guaranties, upon such lessee's receipt from Grantee of written notice to the effect that Grantee is then the holder of this assignment.  No lessee or Lease Guarantor will be obligated to inquire further as to the occurrence or continuance of an Event of Default.  No lessee or Lease Guarantor will be obligated to pay to Grantor any amounts which are actually paid to Grantee in response to such a notice. Grantor will not interfere with and will cooperate with Grantee's collection of such Rents.  Such Rents shall be disbursed and/or applied in accordance with the terms of the Loan Agreement.  In furtherance of the foregoing, Grantor hereby grants to Grantee an irrevocable power of attorney, coupled with an interest, to execute and deliver, on behalf of Grantor, to tenants under current and future Leases and counterparties to Lease Guaranties, direction letters

6

Deed to Secure Debt (Georgia)

to deliver all Rents and all sums due under any Lease Guaranties directly to Grantee or to such other party as Grantee directs. Any exercise of the foregoing power of attorney shall constitute an immediate revocation of the revocable license given pursuant to Section 1.02(a).

Section 1.03    Security Agreement. This Security Deed is both a real property deed to secure debt and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Grantor in the Property. By executing and delivering this Security Deed, Grantor hereby grants to Grantee, as security for the Obligations, a security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "*Collateral*"). If an Event of Default shall occur and be continuing, Grantee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Grantee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Grantee after the occurrence and during the continuance of an Event of Default, Grantor shall, at its expense, assemble the Collateral and make it available to Grantee at a convenient place (at the Land if tangible property) reasonably acceptable to Grantee. Grantor shall pay to Grantee on demand any and all expenses, including reasonable attorneys' fees and costs, incurred or paid by Grantee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Grantee with respect to the Collateral sent to Grantor in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law or the Loan Agreement, constitute reasonable notice to Grantor. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Grantee to the payment of the Debt in such priority and proportions as Grantee in its discretion shall deem proper. The principal place of business of Grantor (Debtor) is as set forth in the preamble of this Security Deed and the address of Grantee (Secured Party) is as set forth in the preamble of this Security Deed.

Section 1.04    Fixture Filing. Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, described or referred to in this Security Deed, and this Security Deed, upon being filed for record in the real estate records of the county wherein such fixtures are situated, shall operate also as a financing statement naming Grantor as the Debtor and Grantee as the Secured Party filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures. For such purpose the following information is given:

| | |
|---|---|
| Name of Debtor: | KPM INVESTMENT A 2 LLC, Delaware limited liability company |
| Address of Debtor: | 123 Taaffe Place |

7

|  |  |
|---|---|
|  | Brooklyn, New York 11211<br>Attention: Joseph Perlmutter |
| Name of Secured Party: | COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company |
| Address of Secured Party: | 4 Park Plaza, Suite 900<br>Irvine, CA 92614<br>Attn: Head of Term Lending |
| Description of the collateral: | The Property (as defined in this Security Deed). |
| Description of real estate to which the collateral is attached or upon which it is or will be located: | The Land (as defined in this Security Deed). |

A statement indicating the types or describing the items, of collateral is set forth above. The real property to which the collateral is related is owned by KPM Investment A 2 LLC.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Grantee and its successors and assigns, IN FEE SIMPLE, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Grantor shall well and truly pay and perform the Obligations (including the payment of the Debt) at the time and in the manner provided in this Security Deed, the Note, the Loan Agreement and the other Loan Documents, and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, then this Security Deed shall be cancelled and surrendered, it being intended by the parties hereto that this instrument shall operate as a deed and not as a mortgage; provided, however, that, subject to Section 9.06, Grantor's obligation to indemnify and hold harmless Grantee pursuant to the provisions hereof shall survive any such payment or release.

THIS CONVEYANCE is intended:  (i) to operate and to be construed as a deed passing the title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and (ii) to constitute a security agreement pursuant to the Uniform Commercial Code as enacted in the State of Georgia, and is given to secure the Obligations, and (iii) to constitute a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code.

## ARTICLE II.

## DEBT AND OBLIGATIONS SECURED

Deed to Secure Debt (Georgia)

**Section 2.01    Obligations.** This Security Deed and the grants, assignments and transfers made in Article I are given for the purpose of securing the Obligations, including, but not limited to, the Debt.

**Section 2.02    Other Obligations.** This Security Deed and the grants, assignments and transfers made in Article I are also given for the purpose of securing the following (collectively, the "***Other Obligations***"):

(a)    the performance of all other obligations of Grantor contained herein;

(b)    the performance of each obligation of Grantor contained in the Loan Agreement and in each other Loan Document; and

(c)    the performance of each obligation of Grantor contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 2.03    Debt and Other Obligations.** Grantor's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "***Obligations.***"

**Section 2.04    Variable Interest Rate.** The Loan secured by this Security Deed may be a variable interest rate loan, if so provided in the Loan Agreement.

**Section 2.05    Loan Repayment.** Provided no Event of Default exists, this Security Deed will be satisfied and discharged of record by Grantee in accordance with the terms and provisions set forth in the Loan Agreement.

**Section 2.06    Other Mortgages; No Election of Remedies.**

(a)    The Debt is now or may hereafter be secured by one or more other mortgages, deeds to secure debt, deeds of trust and other security agreements (collectively, as the same may be amended, restated, replaced, supplemented, extended, renewed or otherwise modified and in effect from time to time, are herein collectively called the "***Other Mortgages***"), which cover or will hereafter cover other properties that are or may be located in various states and in other counties in Georgia (collectively, the "***Other Collateral***"). The Other Mortgages will secure the Debt and the performance of the other covenants and agreements of Grantor set forth in the Loan Documents. Upon the occurrence and during the continuance of an Event of Default, Grantee may proceed under this Security Deed and/or any or all the Other Mortgages against either the Property and/or any or all the Other Collateral in one or more parcels and in such manner and order as Grantee shall elect. Grantor hereby irrevocably waives and releases, to the extent permitted by law, and whether now or hereafter in force, any right to have the Property and/or the Other Collateral marshaled upon any foreclosure of this Security Deed or any Other Mortgage.

(b)    Without limiting the generality of the foregoing, and without limitation as to any other right or remedy provided to Grantee in this Security Deed or the other Loan Documents, in the case and during the continuance of an Event of Default (i) Grantee shall have

9

Deed to Secure Debt (Georgia)

the right to pursue all of its rights and remedies under this Security Deed and the Loan Documents, at law and/or in equity, in one proceeding, or separately and independently in separate proceedings from time to time, as Grantee, in its sole and absolute discretion, shall determine from time to time, (ii) Grantee shall not be required to either marshal assets, sell the Property and/or any Other Collateral in any particular order of alienation (and may sell the same simultaneously and together or separately), or be subject to any "one action" or "election of remedies" law or rule with respect to the Property and/or any Other Collateral, (iii) the exercise by Grantee of any remedies against any one item of Property and/or any Other Collateral will not impede Grantee from subsequently or simultaneously exercising remedies against any other item of Property and/or Other Collateral, (iv) all liens and other rights, remedies or privileges provided to Grantee herein shall remain in full force and effect until Grantee has exhausted all of its remedies against the Property and all Property has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Debt, and (v) Grantee may resort for the payment of the Debt to any security held by Grantee in such order and manner as Grantee, in its discretion, may elect and Grantee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Grantee thereafter to foreclose this Security Deed.

(c)    Without notice to or consent of Grantor and without impairment of the lien, security title, security interest and rights created by this Security Deed, Grantee may, at any time (in its sole and absolute discretion, but Grantee shall have no obligation to), execute and deliver to Grantor a written instrument releasing all or a portion of the lien, security title and security interest of this Security Deed as security for any or all of the Obligations now existing or hereafter arising under or in respect of the Note, the Loan Agreement and each of the other Loan Documents, whereupon following the execution and delivery by Grantee to Grantor of any such written instrument of release, this Security Deed shall no longer secure such Obligations released.

## ARTICLE III.

### GRANTOR COVENANTS

Grantor covenants and agrees that throughout the term of the Loan:

**Section 3.01   Payment of Debt.**   Grantor will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Deed.

**Section 3.02   Incorporation by Reference.**   All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note, and (c) all and any of the other Loan Documents, are hereby made a part of this Security Deed to the same extent and with the same force as if fully set forth herein. In the event of any inconsistency between any of the terms of this Security Deed (including the terms of Section 1.03 herein) and the Loan Agreement, the terms of the Loan Agreement shall control. Without limiting the generality of the foregoing, Grantor (i) agrees to insure, repair, maintain and restore damage to the Property, pay Taxes and Other Charges assessed against the Property, and comply with Legal Requirements, in accordance with the Loan Agreement, and (ii) agrees that the proceeds of insurance and

10

Deed to Secure Debt (Georgia)

condemnation awards shall be settled, held, applied and/or disbursed in accordance with the Loan Agreement.

**Section 3.03    Performance of Other Agreements.**  Grantor shall observe and perform each and every term, covenant and provision to be observed or performed by Grantor pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property, and any amendments, modifications or changes thereto.

## ARTICLE IV.

## OBLIGATIONS AND RELIANCES

**Section 4.01    Relationship of Grantor and Grantee.**  The relationship between Grantor and Grantee is solely that of debtor and creditor, and Grantee has no fiduciary or other special relationship with Grantor, and no term or condition of any of the Loan Agreement, the Note, this Security Deed or the other Loan Documents shall be construed so as to deem the relationship between Grantor and Grantee to be other than that of debtor and creditor.

**Section 4.02    No Reliance on Grantee.**  The general partners, members, principals and (if Grantor is a trust) beneficial owners of Grantor, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Grantor and Grantee are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.  Grantor is not relying on Grantee's expertise, business acumen or advice in connection with the Property.

**Section 4.03    No Grantee Obligations.**

(a)    Notwithstanding the provisions of Subsections 1.01(h) and (m) or Section 1.02, Grantee is not undertaking the performance of (i) any obligations under the Leases, or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Grantee pursuant to this Security Deed, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, Grantee shall not be deemed to have warranted, consented to, or affirmed the sufficiency, legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Grantee.

**Section 4.04    Reliance.**  Grantor recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Security Deed and the other Loan Documents, Grantee is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Article V of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Grantee; that such reliance existed on the part of Grantee prior to the date hereof; that the warranties and representations are a material inducement to Grantee in making the Loan; and that Grantee would not be willing to make the

11

Deed to Secure Debt (Georgia)

Loan and accept this Security Deed in the absence of the warranties and representations as set forth in <u>Article V</u> of the Loan Agreement.

## ARTICLE V.

## FURTHER ASSURANCES

**Section 5.01   <u>Recording of Security Deed, Etc.</u>.**  Grantor forthwith upon the execution and delivery of this Security Deed and thereafter, from time to time, will cause this Security Deed and any of the other Loan Documents creating a Lien, security title or security interest or evidencing the Lien, security title and security interest hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the Lien, security title or security interest hereof upon, and the interest of Grantee in, the Property.  Grantor will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Deed, the other Loan Documents, any note, deed of trust, deed to secure debt or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of any of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Deed, any deed of trust, deed to secure debt or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of any of the foregoing documents, except where prohibited by law so to do.

**Section 5.02   <u>Further Acts, Etc.</u>.**  Grantor will, at the cost of Grantor, and without expense to Grantee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, deeds to secure debt, mortgages, assignments, notices of assignments, transfers and assurances as Grantee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Grantee the Property and rights hereby deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Grantor may be or may hereafter become bound to convey or assign to Grantee, or for carrying out the intention or facilitating the performance of the terms of this Security Deed or for filing, registering or recording this Security Deed, or for complying with all Legal Requirements.  Grantor, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Grantee to execute in the name of Grantor or without the signature of Grantor to the extent Grantee may lawfully do so, one or more financing statements to evidence more effectively the security interest of Grantee in the Property and the Collateral.  Financing statements to be filed with the Secretary of State of the State in which the Grantor is organized may describe as the collateral covered thereby "all assets of the debtor, whether now owned or hereafter acquired" or words to that effect, notwithstanding that such collateral description may be broader in scope than the collateral described herein.  Grantee shall provide Grantor with copies of any notices and/or instruments of filings executed by Grantee in accordance with the immediately preceding sentence.  Grantor grants to Grantee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Grantee at law and in equity, including, without limitation, such rights and

12

Deed to Secure Debt (Georgia)

remedies available to Grantee pursuant to this <u>Section 5.02</u>. Notwithstanding anything to the contrary in the immediately preceding sentence, Grantee shall not execute any documents as attorney in fact for Grantor unless (i) Grantor shall have failed or refused to execute the same within ten (10) Business Days after delivery of Grantee's request to Grantor or (ii) an Event of Default is continuing.

### Section 5.03    Changes in Tax, Debt, Credit and Documentary Stamp Laws.

(a)    If any law is enacted or adopted or amended after the date of this Security Deed which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Grantee's interest in the Property, Grantor will pay the tax, with interest and penalties thereon, if any (it being understood that nothing hereunder shall require Grantor to pay any income or franchise tax imposed on Grantee by reason of Grantee's interest in the Property). If Grantee is advised by counsel chosen by it that the payment of tax by Grantor would be unlawful or taxable to Grantee or unenforceable or provide the basis for a defense of usury, then Grantee shall have the option, by written notice to Grantor, to declare the Debt due and payable no earlier than one hundred twenty (120) days following such notice.

(b)    Grantor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Deed or the Debt, if such claim, credit or deduction directly and proximately results in the imposition of a new or increased material Tax on Grantee by reason of Grantee's interest in the Debt, unless Grantor agrees to pay such Tax or otherwise reimburse Grantee. If such claim, credit or deduction shall be required by law and (i) Grantor chooses not to pay or otherwise reimburse Grantee for any such Tax imposed on Grantee or (ii) Grantee is advised by counsel chosen by it that the payment by Grantor of any such Tax imposed on Grantee would be unlawful or taxable to Grantee or unenforceable or provide the basis for a defense of usury, Grantee shall have the option, by written notice to Grantor, to declare the Debt due and payable no earlier than one hundred twenty (120) days following such notice.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Deed, or any of the other Loan Documents or shall impose any other tax or charge on the same, Grantor will pay for the same, with interest and penalties thereon, if any.

## ARTICLE VI.

## DUE ON SALE/ENCUMBRANCE

**Section 6.01    Grantee Reliance**. Grantor acknowledges that Grantee has examined and relied on the experience of Grantor and its general partners, members, principals and (if Grantor is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Grantor's ownership of the Property as a means of maintaining the value of the Property as security for the payment and performance of the

13

Obligations, including the repayment of the Debt.  Grantor acknowledges that Grantee has a valid interest in maintaining the value of the Property so as to ensure that, should Grantor default in the payment and/or performance of the Obligations, including the repayment of the Debt, Grantee can recover the Debt by a sale or foreclosure of the Property or other sale permitted by applicable law as to the Personal Property, Equipment or Fixtures.

**Section 6.02  No Transfer**.  Grantor shall not permit or suffer any Transfer to occur except in accordance with the terms of the Loan Agreement.

## ARTICLE VII.

## RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.01  Remedies**.  Upon the occurrence and during the continuance of any Event of Default, Grantor agrees that, except to the extent otherwise provided in any other Loan Document, Grantee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Grantor and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Grantee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Grantee:

(a)    declare the entire unpaid Debt to be immediately due and payable;

(b)    intentionally omitted;

(c)    institute proceedings, judicial or otherwise, for the complete or partial foreclosure of this Security Deed under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, Grantee being hereby expressly granted the power to foreclose this Security Deed and sell the Property at public auction and convey the same to the purchaser in fee simple;

(d)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Deed for the portion of the Debt then due and payable, subject to the continuing lien, security title and security interest of this Security Deed for the balance of the Obligations not then due, unimpaired and without loss of priority;

(e)    intentionally omitted;

(f)    upon acceleration of the maturity of the Debt, sell the Property, or any part thereof, at public sale or sales conducted at the time and place and in the usual manner of the sheriff's sales in the county in which the Property, or any part thereof, is situated, to the highest bidder for cash, in order to pay the Obligations and insurance premiums, liens, assessments, taxes and charges, including utility charges, if any, with accrued interest thereon and all costs incurred by Grantee in connection with such sale and all other expenses of the sale and of all proceedings in connection therewith, including reasonable attorneys' fees actually incurred, after advertising the time, place and terms of sale once a week for four (4) consecutive weeks

14

Deed to Secure Debt (Georgia)

immediately preceding such sale (but without regard to the number of days elapsed intervening between the date of publication of the first advertisement and the date of sale) in a newspaper in which sheriff's sales are advertised in said county; and without limiting the foregoing::

(i)    In connection with any sale or sales hereunder, Grantee shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any Improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property. Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Grantee shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(ii)    Grantee shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Grantee so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Grantee and Grantee is hereby authorized and empowered to conduct any such sale of any Real Property, Personal Property, Equipment and Fixtures in accordance with the procedures applicable to real property;

(iii)    Grantee may bid and purchase at any such sale, and at any other sale or sales hereunder, and may satisfy Grantee's obligation to purchase pursuant to Grantee's bid by canceling an equivalent portion of any Obligations then outstanding and secured hereby. Grantee may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale;

(iv)    In connection with any sale or sales hereunder, Grantee may execute and deliver to the purchaser a deed conveying the Property, or any part thereof, in fee simple (but without covenants and warranties, express or implied), and, to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title, and equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed, and any recitals in said deed or conveyances as to facts essential to a valid sale shall be binding on Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided by law for collection of the Obligations secured hereby, and shall not be exhausted by one exercise thereof but may be exercised until full payment of all Obligations secured hereby; and

(v)    If the Property consists of several lots, parcels or items of property, Grantee shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Grantee designates

15

Deed to Secure Debt (Georgia)

and Grantor waives any right to require otherwise. Any Person, including Grantor or Grantee, may purchase at any sale hereunder. Should Grantee desire that more than one sale or other disposition of the Property be conducted, Grantee shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Grantee may designate, and no such sale shall terminate or otherwise affect the Lien, security title and security interest of this Security Deed on any part of the Property not sold until all the Obligations have been satisfied in full. In the event Grantee elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Grantor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

(vi)    If Grantee has started enforcement of any right by foreclosure, sale, entry, or otherwise and such proceeding shall be discontinued, abandoned, or determined adversely for any reason, then Grantee and Grantor shall be restored to their former positions and rights under the Loan Documents with respect to the Property, subject to the lien, security title and security interest of this Security Deed, and Grantor hereby expressly waives any and all benefits Grantor may have under O.C.G.A. § 44-14-85 or any similar law to claim that the withdrawal of any foreclosure proceedings shall operate to rescind the acceleration of the maturity of the Obligations and to reinstate the Obligations upon the terms and conditions existing prior to such acceleration; and

(vii)    In connection with any sale or sales hereunder, Grantor shall vacate and surrender possession of the Property, or such part thereof as is sold, to Grantee or to such purchaser, and, in default thereof, Grantor shall be deemed a tenant at sufferance and may be evicted by summary proceedings or otherwise;

(g)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or in the other Loan Documents;

(h)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Deed or the other Loan Documents;

(i)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Grantor, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof, and Grantor hereby irrevocably consents to such appointment;

(j)    the license granted to Grantor under Section 1.02 hereof shall automatically be revoked and Grantee may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Grantor and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Grantor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Grantor agrees to surrender possession of the Property and of such books, records and accounts to Grantee upon demand, and thereupon Grantee may do such acts and things as Grantee deems necessary or desirable to protect the security hereof, including without

16

limitation, (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat on such terms and for such period of time as Grantee may deem proper; (ii) complete any construction on the Property in such manner and form as Grantee deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Grantor with respect to the Property, whether in the name of Grantor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants and demand, sue for or otherwise collect and receive all Rents and all sums due under all Lease Guaranties, including, without limitation, those past due and unpaid; (v) require Grantor to pay monthly in advance to Grantee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Grantor; (vi) require Grantor to vacate and surrender possession of the Property to Grantee or to such receiver and, in default thereof, Grantor shall be deemed a tenant at sufferance and may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment and performance of the Obligations (including, without limitation, the payment of the Debt), in such order, priority and proportions as Grantee shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes or Other Charges assessed against the Property, insurance premiums, other expenses and Capital Expenditures incurred in connection with the Property, as well as just and reasonable compensation for the services of Grantee, its counsel, agents and employees;

(k)    exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and/or the Personal Property, or any part thereof, and to take such other measures as Grantee may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Grantor, at its sole cost and expense, to assemble the Fixtures, the Equipment and/or the Personal Property and make it available to Grantee at a convenient place acceptable to Grantee.  Any notice of sale, disposition or other intended action by Grantee with respect to the Fixtures, the Equipment and/or the Personal Property sent to Grantor in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall constitute commercially reasonable notice to Grantor;

(l)    apply any sums then deposited or held in escrow or otherwise by or on behalf of Grantee in accordance with the terms of the Loan Agreement, this Security Deed or any other Loan Document to the payment of the following items in any order in its sole discretion:

(i)    Taxes and Other Charges assessed against the Property;

(ii)    Insurance premiums;

(iii)    Other expenses and Capital Expenditures incurred in connection with the Property;

(iv)    Interest on the unpaid principal balance of the Note;

17

Deed to Secure Debt (Georgia)

(v)    Amortization of the unpaid principal balance of the Note; and/or

(vi)    All other sums payable pursuant to the Note, the Loan Agreement, this Security Deed and the other Loan Documents, including, without limitation, the Release Price, if applicable, and advances made by Grantee pursuant to the terms of this Security Deed;

(m)    pursue such other remedies as may be available to Grantee at law or in equity; and/or

(n)    apply the undisbursed balance of any escrow or other deposits held by or on behalf of Grantee with respect to the Property, to the payment of the Debt in such order, priority and proportions as Grantee shall deem to be appropriate in its sole discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Deed shall continue as a Lien, security title and security interest on the remaining portion of the Property unimpaired and without loss of priority.

The exercise by Grantee of its rights under this Section 7.01 and the collection of the Rents and the sums due under the Lease Guaranties and the application thereof as provided in the Loan Documents shall not be considered a waiver of any Default or Event of Default under the Note, the Loan Agreement, this Security Deed or the other Loan Documents.

**Section 7.02    Application of Proceeds**.  The purchase money proceeds and avails of any disposition of the Property or any part thereof, or any other sums collected by Grantee pursuant to the Note, this Security Deed or the other Loan Documents, may be applied by Grantee to the payment of the Obligations in such priority and proportions as Grantee in its discretion shall deem proper, to the extent consistent with law and the Loan Agreement, if applicable.

**Section 7.03    Right to Cure Defaults**.  During the continuance of any Event of Default, Grantee may, but without any obligation to do so and without notice to or demand on Grantor, except to the extent otherwise required by the terms of any Loan Document, and without releasing Grantor from any obligation hereunder, perform the obligations in Default in such manner and to such extent as Grantee may deem necessary to protect the security hereof. Grantee is authorized to enter upon the Property for such purposes or appear in, defend or bring any action or proceeding to protect its interest in the Property, to foreclose this Security Deed or collect the Debt, and to make any protective advances that Grantee may deem necessary to protect the security hereof, and the cost and expense of any of the foregoing (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest thereon at the Default Rate for the period after notice from Grantee that such cost or expense was incurred to the date of payment to Grantee, shall constitute a portion of the Debt, shall be secured by this Security Deed and the other Loan Documents and shall be due and payable to Grantee upon demand.

**Section 7.04    Other Rights, Etc**.

(a)    The failure of Grantee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Deed.  Grantor shall not be

18

Deed to Secure Debt (Georgia)

relieved of Grantor's obligations hereunder by reason of (i) the failure of Grantee to comply with any request of Grantor or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Deed or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Obligations or any portion thereof, or (iii) any agreement or stipulation by Grantee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Deed or the other Loan Documents.

(b)     It is agreed that the risk of loss or damage to the Property is on Grantor, and Grantee shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured.  Possession by Grantee shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Grantee's possession.

(c)     Grantee may resort for the payment and performance of the Obligations (including, but not limited to, the payment of the Debt) to any other security held by Grantee in such order and manner as Grantee, in its discretion, may elect.  Grantee may take action to recover the Debt, or any portion thereof, or to enforce the Other Obligations or any covenant hereof, without prejudice to the right of Grantee thereafter to enforce any remedy hereunder or under applicable law against Grantor, including the right to foreclose this Security Deed.  The rights of Grantee under this Security Deed shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Grantee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.  Grantee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 7.05    Right to Release Any Portion of the Property**.  Grantee may release any portion of the Property for such consideration as Grantee may require without, as to the remainder of the Property, in any way impairing or affecting the Lien, security title or priority of this Security Deed, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Debt shall have been reduced by the actual monetary consideration, if any, received by Grantee for such release, and Grantee may accept by assignment, pledge or otherwise any other property in place thereof as Grantee may require without being accountable for so doing to any other lienholder.  This Security Deed shall continue as a Lien, security title and security interest in the remaining portion of the Property.

**Section 7.06    Right of Entry**.  Subject to the rights of Tenants and upon reasonable prior notice to Grantor, Grantee and its agents shall have the right, subject to the rights of Tenants under the Leases, provided that Borrower shall reasonably cooperate with Lender in obtaining any consents from the Tenants necessary for such entry and inspection, to enter and inspect the Property at all reasonable times.

**ARTICLE VIII.**

**INDEMNIFICATION**

19

Deed to Secure Debt (Georgia)

**Section 8.01    Mortgage and/or Intangible Tax**.  Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless Grantee and any Person claiming by or through Grantee (collectively with Grantee, the "*Indemnified Parties*" and each, an "*Indemnified Party*") from and against any and all losses, damages, costs, fees, expenses claims, suits, judgments, awards, liabilities, obligations, debts, fines, penalties or charges imposed upon or incurred by or asserted against any Indemnified Party and directly or indirectly arising out of or in any way relating to any mortgage, recording, stamp, intangible or other similar taxes required to be paid by any Indemnified Party under applicable Legal Requirements in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of this Security Deed or any of the other Loan Documents (but excluding any income, franchise or other similar taxes).

**Section 8.02    No Liability to Grantee**.  This Security Deed shall not be construed to bind Grantee to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Grantee with respect to the Leases.    Grantee shall not be liable for any loss sustained by Grantor resulting from Grantee's failure to let the Property after an Event of Default or from any other act or omission of Grantee in managing the Property after an Event of Default unless such loss is caused by the willful misconduct, bad faith or gross negligence of Grantee.  Grantee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Security Deed and Grantor shall indemnify Grantee for, and hold Grantee harmless from and against, (a) any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Security Deed, and (b) any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Grantee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties, unless caused by the willful misconduct or bad faith of Grantee.  Should Grantee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees and costs, shall be secured by this Security Deed and by the other Loan Documents and Grantor shall reimburse Grantee therefor within seven (7) Business Days after demand therefor, and upon the failure of Grantor so to do Grantee may, at its option, declare the Obligations to be immediately due and payable.  This Security Deed shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Grantee, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Grantee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including, without limitation, the presence of any Hazardous Substances (as defined in the Environmental Indemnity), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

**Section 8.03    Duty to Defend; Attorneys' Fees and Other Fees and Expenses**.  In connection with any indemnification obligations of Grantor hereunder, upon written request by any Indemnified Party, Grantor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals reasonably approved by the Indemnified Parties.    Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Grantor and any Indemnified Party and

20

Grantor and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or in addition to those available to Grantor, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party. Upon demand, Grantor shall pay or, in the sole and absolute discretion of any Indemnified Party, reimburse, such Indemnified Party for the payment of the reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

## ARTICLE IX.

## WAIVERS

**Section 9.01  Waiver of Counterclaim.** To the extent permitted by applicable law, Grantor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Grantee arising out of or in any way connected with this Security Deed, the Loan Agreement, the Note, any of the other Loan Documents or the Obligations.

**Section 9.02  Marshaling and Other Matters.** To the extent permitted by applicable law, Grantor hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, to the extent permitted by applicable law, Grantor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Deed on behalf of Grantor, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Deed.

**Section 9.03  Waiver of Notice.** To the extent permitted by applicable law, Grantor shall not be entitled to any notices of any nature whatsoever from Grantee, except with respect to matters for which this Security Deed or any of the other Loan Documents specifically and expressly provide for the giving of notice by Grantee to Grantor, and except with respect to matters for which Grantee is required by applicable law to give notice, and Grantor hereby expressly waives the right to receive any notice from Grantee with respect to any matter for which this Security Deed or any of the other Loan Documents does not specifically and expressly provide for the giving of notice by Grantee to Grantor.

**Section 9.04  Waiver of Statute of Limitations.** To the extent permitted by applicable law, Grantor hereby expressly waives and releases its right to plead any statute of limitations as a defense to the payment and performance of the Obligations (including, without limitation, the payment of the Debt).

**Section 9.05  Waiver of Jury Trial. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, GRANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST, WITH REGARD TO THE NOTE, THIS**

21

Deed to Secure Debt (Georgia)

**SECURITY DEED OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GRANTOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. GRANTEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GRANTOR.**

**Section 9.06   Survival**. Except as otherwise set forth in the other Loan Documents, the indemnifications made pursuant to Article VIII herein and the representations and warranties, covenants, and other obligations arising under the Loan Documents, shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by (a) any satisfaction, release or other termination of this Security Deed or any other Loan Document, (b) any assignment or other transfer of all or any portion of this Security Deed or any other Loan Document or Grantee's interest in the Property (but, in such case, such indemnifications shall benefit both the Indemnified Parties and any such assignee or transferee), (c) any exercise of Grantee's rights and remedies pursuant hereto, including, but not limited to, foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Grantor or by Grantee following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), (d) any amendment to this Security Deed, the Loan Agreement, the Note or any other Loan Document, and/or (e) any act or omission that might otherwise be construed as a release or discharge of Grantor from the Obligations or any portion thereof. Notwithstanding the foregoing or anything to the contrary set forth herein, in no event shall Grantor be obligated to defend or indemnify any Indemnified Party for any damages, losses, claims and liabilities directly resulting from the gross negligence, bad faith or willful misconduct of such Indemnified Party.

## ARTICLE X.

## NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 9.1 of the Loan Agreement.

## ARTICLE XI.

## APPLICABLE LAW

**Section 11.01 Governing Law; Jurisdiction; Service of Process. WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND ENFORCEMENT OF LIENS AND SECURITY INTERESTS CREATED UNDER THIS SECURITY DEED, THIS SECURITY DEED SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST**

22

Deed to Secure Debt (Georgia)

EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW) SHALL GOVERN ALL MATTERS RELATING TO THIS SECURITY DEED AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

Section 11.02 **Usury Laws**. Notwithstanding anything to the contrary, (a) all agreements and communications between Grantor and Grantee are hereby and shall automatically be limited so that, after taking into account all amounts deemed to constitute interest, the interest contracted for, charged or received by Grantee shall never exceed the maximum legal rate of interest (the "***Maximum Legal Rate***"), (b) in calculating whether any interest exceeds the Maximum Legal Rate, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal Indebtedness of Grantor to Grantee, and (c) if through any contingency or event, Grantee receives or is deemed to receive interest in excess of the Maximum Legal Rate, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding Indebtedness of Grantor to Grantee, or if there is no such Indebtedness, shall immediately be returned to Grantor.

Section 11.03 **Provisions Subject to Applicable Law**. All rights, powers and remedies provided in this Security Deed may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Deed invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Deed or any application thereof shall be invalid or unenforceable, the remainder of this Security Deed and any other application of the term shall not be affected thereby.

## ARTICLE XII.

## DEFINITIONS

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Deed may be used interchangeably in the singular or plural form and the word "Grantor" shall mean "each Grantor and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Grantee" shall mean "Grantee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of Indebtedness secured by this Security Deed," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all reasonable attorneys', paralegal and law clerk fees and reasonable out-of-pocket disbursements, including, but not limited to, fees and reasonable out-of-pocket disbursements at the pre-trial, trial and appellate levels, incurred or paid by Grantee in protecting its interest in the Property, the Leases, the Rents, the sums due under the Lease Guaranties, and/or in enforcing its rights hereunder. Whenever the context may

23

require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

**Section 13.01 <u>No Oral Change</u>.** This Security Deed, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Grantor or Grantee, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 13.02 <u>Successors and Assigns</u>.** This Security Deed shall be binding upon, and shall inure to the benefit of, Grantor and Grantee and their respective successors and permitted assigns, as set forth in the Loan Agreement.

**Section 13.03 <u>Inapplicable Provisions</u>.** If any provision of this Security Deed is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Security Deed, such provision shall be fully severable and this Security Deed shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Security Deed, and the remaining provisions of this Security Deed shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Security Deed, unless such continued effectiveness of this Security Deed, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**Section 13.04 <u>Headings, Etc</u>.** The headings and captions of the various Sections of this Security Deed are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 13.05 <u>Subrogation</u>.** If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Grantee shall be subrogated to all of the rights, claims, liens, titles and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles and interests, if any, are not waived, but rather are continued in full force and effect in favor of Grantee and are merged with the Lien, security title and security interest created herein as cumulative security for the payment, performance and discharge of the Obligations (including, but not limited to, the payment of the Debt).

**Section 13.06 <u>Entire Agreement</u>.** The Note, the Loan Agreement, this Security Deed and the other Loan Documents constitute the entire understanding and agreement between Grantor and Grantee with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Grantor and Grantee with respect thereto. Grantor hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Security Deed and the other Loan Documents,

24

Deed to Secure Debt (Georgia)

there are not, and were not, and no Persons are or were authorized by Grantee to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Security Deed and the other Loan Documents.

**Section 13.07 <u>Limitation on Grantee's Responsibility</u>**. No provision of this Security Deed shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Grantee, nor shall it operate to make Grantee responsible or liable for any waste committed on the Property by the Tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any Tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Grantee a "mortgagee in possession."

**Section 13.08 <u>Recitals</u>**. The recitals hereof are a part hereof, form a basis for this Security Deed and shall be considered prima facie evidence of the facts and documents referred to therein.

**Section 13.09 <u>Time of Essence</u>**. Time is of the essence with respect to this Security Deed and each and every provision hereof.

## ARTICLE XIV.

## STATE-SPECIFIC PROVISIONS

**Section 14.01 <u>Principles of Construction</u>**. Without limiting Section 11.01, to the extent that the laws of the State of Georgia govern the interpretation or enforcement of this Security Deed, (a) the provisions of this Article XIV shall apply, and (b) in the event of any inconsistencies between the terms and provisions of this Article XIV and the other terms and provisions of this Security Deed, the terms and provisions of this Article XIV shall control and be binding.

**Section 14.02 <u>Future Advances</u>**. This Security Deed is given to secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of the Grantee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Security Deed. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed $18,900,000.00, (if blank, twice the amount secured by this Security Deed) plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Property, plus interest thereon.

**Section 14.03 <u>Attorney Fees</u>**. Notwithstanding anything contained herein or in any of the other Loan Documents to the contrary, (i) "reasonable attorneys' fees," "reasonable counsel's fees," "attorneys' fees" and other words of similar import, are not, and shall not be statutory attorneys' fees under the Official Code of Georgia ("<u>O.C.G.A.</u>"), (ii) if, under any circumstances Grantor is required hereunder to pay any or all Grantee's attorneys' fees and expenses,

25

howsoever described or referenced, Grantor shall be responsible only for reasonable legal fees and out of pocket expenses actually incurred by Grantee at customary hourly rates actually charged to Grantee for the work done, and (iii) Grantor shall not be liable under any circumstances for additional attorneys' fees or expenses, howsoever described or referenced, under O.C.G.A. Section 13-1-11.

Section 14.04 <u>WAIVER</u>.  GRANTOR HEREBY, (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON THE OCCURRENCE AND CONTINUANCE OF AN EVENT OF DEFAULT WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE (EXCEPT AS OTHERWISE PROVIDED HEREIN); (B) WAIVES ANY RIGHT GRANTOR MAY HAVE UNDER THE CONSTITUTIONS OF THE SEVERAL STATES OR THE CONSTITUTION OR THE LAWS OF THE UNITED STATES OF AMERICA (INCLUDING WITHOUT LIMITATION THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE, OTHER THAN EXPRESSLY PROVIDED FOR IN THIS SECURITY DEED, AND TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED BY THIS SECURITY DEED TO GRANTEE, AND; (C) WAIVES GRANTOR'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS SECURITY DEED ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT A PRIOR JUDICIAL HEARING.  BY INITIALING IN THE SPACE PROVIDED BELOW, GRANTOR ACKNOWLEDGES THAT ALL WAIVERS BY GRANTOR IN THIS PARAGRAPH AND ELSEWHERE IN THIS SECURITY DEED HAVE BEEN MADE VOLUNTARILY, INTENTIONALLY, WILLINGLY AND KNOWINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION, AFTER GRANTOR HAS BY GRANTOR'S ATTORNEY BEEN FIRST APPRISED OF AND COUNSELED WITH RESPECT TO GRANTOR'S POSSIBLE ALTERNATIVE RIGHTS.

_____
(INITIALED BY GRANTOR)

**[NO FURTHER TEXT ON THIS PAGE]**

26

Deed to Secure Debt (Georgia)

IN WITNESS WHEREOF. THIS SECURITY DEED has been executed under seal by Grantor as of the day and year first above written.

**GRANTOR:**

Signed, sealed, and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: 11-23-2024

[NOTARY SEAL]

**KPM INVESTMENT A 2 LLC.**
a Delaware limited liability company

By: _____ (SEAL)
Name:  Joseph Perlmutter
Title:  President

Schedule 1                    Deed to Secure Debt (Georgia)

SCHEDULE 1

Property List

| Asset ID | Address | City | State | Zip | County |
|---|---|---|---|---|---|
| 736929 | 6370 Shannon Pkwy Apt 1001 | Union City | GA | 30291 | Fulton |
| 736930 | 6370 Shannon Pkwy Apt 1002 | Union City | GA | 30291 | Fulton |
| 736931 | 6370 Shannon Pkwy Apt 1003 | Union City | GA | 30291 | Fulton |
| 736932 | 6370 Shannon Pkwy Apt 1004 | Union City | GA | 30291 | Fulton |
| 736933 | 6370 Shannon Pkwy Apt 1005 | Union City | GA | 30291 | Fulton |
| 736934 | 6370 Shannon Pkwy Apt 1006 | Union City | GA | 30291 | Fulton |
| 736935 | 6370 Shannon Pkwy Apt 1007 | Union City | GA | 30291 | Fulton |
| 736936 | 6370 Shannon Pkwy Apt 1008 | Union City | GA | 30291 | Fulton |
| 736992 | 6370 Shannon Pkwy Apt 102 | Union City | GA | 30291 | Fulton |
| 736993 | 6370 Shannon Pkwy Apt 103 | Union City | GA | 30291 | Fulton |
| 736994 | 6370 Shannon Pkwy Apt 104 | Union City | GA | 30291 | Fulton |
| 736995 | 6370 Shannon Pkwy Apt 105 | Union City | GA | 30291 | Fulton |
| 736996 | 6370 Shannon Pkwy Apt 106 | Union City | GA | 30291 | Fulton |
| 736890 | 6370 Shannon Pkwy Apt 107 | Union City | GA | 30291 | Fulton |
| 736937 | 6370 Shannon Pkwy Apt 1101 | Union City | GA | 30291 | Fulton |
| 736938 | 6370 Shannon Pkwy Apt 1102 | Union City | GA | 30291 | Fulton |
| 736894 | 6370 Shannon Pkwy Apt 1103 | Union City | GA | 30291 | Fulton |
| 736939 | 6370 Shannon Pkwy Apt 1104 | Union City | GA | 30291 | Fulton |
| 736940 | 6370 Shannon Pkwy Apt 1105 | Union City | GA | 30291 | Fulton |
| 736941 | 6370 Shannon Pkwy Apt 1106 | Union City | GA | 30291 | Fulton |
| 736942 | 6370 Shannon Pkwy Apt 1107 | Union City | GA | 30291 | Fulton |
| 736943 | 6370 Shannon Pkwy Apt 1108 | Union City | GA | 30291 | Fulton |
| 736944 | 6370 Shannon Pkwy Apt 1109 | Union City | GA | 30291 | Fulton |
| 736945 | 6370 Shannon Pkwy Apt 1110 | Union City | GA | 30291 | Fulton |
| 736946 | 6370 Shannon Pkwy Apt 1201 | Union City | GA | 30291 | Fulton |
| 736947 | 6370 Shannon Pkwy Apt 1202 | Union City | GA | 30291 | Fulton |
| 736948 | 6370 Shannon Pkwy Apt 1203 | Union City | GA | 30291 | Fulton |
| 736895 | 6370 Shannon Pkwy Apt 1204 | Union City | GA | 30291 | Fulton |
| 736949 | 6370 Shannon Pkwy Apt 1205 | Union City | GA | 30291 | Fulton |
| 736950 | 6370 Shannon Pkwy Apt 1206 | Union City | GA | 30291 | Fulton |
| 736951 | 6370 Shannon Pkwy Apt 1207 | Union City | GA | 30291 | Fulton |
| 736952 | 6370 Shannon Pkwy Apt 1208 | Union City | GA | 30291 | Fulton |
| 736953 | 6370 Shannon Pkwy Apt 1301 | Union City | GA | 30291 | Fulton |
| 736954 | 6370 Shannon Pkwy Apt 1302 | Union City | GA | 30291 | Fulton |
| 736955 | 6370 Shannon Pkwy Apt 1303 | Union City | GA | 30291 | Fulton |
| 736956 | 6370 Shannon Pkwy Apt 1304 | Union City | GA | 30291 | Fulton |
| 736957 | 6370 Shannon Pkwy Apt 1305 | Union City | GA | 30291 | Fulton |
| 736958 | 6370 Shannon Pkwy Apt 1306 | Union City | GA | 30291 | Fulton |

2

Deed to Secure Debt (Georgia)

| 736896 | 6370 Shannon Pkwy Apt 1307 | Union City | GA | 30291 | Fulton |
| 736959 | 6370 Shannon Pkwy Apt 1401 | Union City | GA | 30291 | Fulton |
| 736960 | 6370 Shannon Pkwy Apt 1402 | Union City | GA | 30291 | Fulton |
| 736961 | 6370 Shannon Pkwy Apt 1403 | Union City | GA | 30291 | Fulton |
| 736962 | 6370 Shannon Pkwy Apt 1404 | Union City | GA | 30291 | Fulton |
| 736963 | 6370 Shannon Pkwy Apt 1405 | Union City | GA | 30291 | Fulton |
| 736964 | 6370 Shannon Pkwy Apt 1406 | Union City | GA | 30291 | Fulton |
| 736965 | 6370 Shannon Pkwy Apt 1407 | Union City | GA | 30291 | Fulton |
| 736966 | 6370 Shannon Pkwy Apt 1408 | Union City | GA | 30291 | Fulton |
| 736967 | 6370 Shannon Pkwy Apt 1501 | Union City | GA | 30291 | Fulton |
| 736968 | 6370 Shannon Pkwy Apt 1502 | Union City | GA | 30291 | Fulton |
| 736897 | 6370 Shannon Pkwy Apt 1503 | Union City | GA | 30291 | Fulton |
| 736969 | 6370 Shannon Pkwy Apt 1504 | Union City | GA | 30291 | Fulton |
| 736970 | 6370 Shannon Pkwy Apt 1505 | Union City | GA | 30291 | Fulton |
| 736971 | 6370 Shannon Pkwy Apt 1506 | Union City | GA | 30291 | Fulton |
| 736972 | 6370 Shannon Pkwy Apt 1507 | Union City | GA | 30291 | Fulton |
| 736973 | 6370 Shannon Pkwy Apt 1601 | Union City | GA | 30291 | Fulton |
| 736974 | 6370 Shannon Pkwy Apt 1602 | Union City | GA | 30291 | Fulton |
| 736975 | 6370 Shannon Pkwy Apt 1603 | Union City | GA | 30291 | Fulton |
| 736976 | 6370 Shannon Pkwy Apt 1604 | Union City | GA | 30291 | Fulton |
| 736977 | 6370 Shannon Pkwy Apt 1605 | Union City | GA | 30291 | Fulton |
| 736978 | 6370 Shannon Pkwy Apt 1606 | Union City | GA | 30291 | Fulton |
| 736898 | 6370 Shannon Pkwy Apt 1607 | Union City | GA | 30291 | Fulton |
| 736979 | 6370 Shannon Pkwy Apt 1608 | Union City | GA | 30291 | Fulton |
| 736980 | 6370 Shannon Pkwy Apt 1701 | Union City | GA | 30291 | Fulton |
| 736981 | 6370 Shannon Pkwy Apt 1702 | Union City | GA | 30291 | Fulton |
| 736982 | 6370 Shannon Pkwy Apt 1703 | Union City | GA | 30291 | Fulton |
| 736983 | 6370 Shannon Pkwy Apt 1704 | Union City | GA | 30291 | Fulton |
| 736984 | 6370 Shannon Pkwy Apt 1705 | Union City | GA | 30291 | Fulton |
| 736985 | 6370 Shannon Pkwy Apt 1706 | Union City | GA | 30291 | Fulton |
| 736986 | 6370 Shannon Pkwy Apt 1707 | Union City | GA | 30291 | Fulton |
| 736987 | 6370 Shannon Pkwy Apt 1708 | Union City | GA | 30291 | Fulton |
| 736899 | 6370 Shannon Pkwy Apt 201 | Union City | GA | 30291 | Fulton |
| 736989 | 6370 Shannon Pkwy Apt 202 | Union City | GA | 30291 | Fulton |
| 736997 | 6370 Shannon Pkwy Apt 203 | Union City | GA | 30291 | Fulton |
| 736998 | 6370 Shannon Pkwy Apt 204 | Union City | GA | 30291 | Fulton |
| 736900 | 6370 Shannon Pkwy Apt 205 | Union City | GA | 30291 | Fulton |
| 736999 | 6370 Shannon Pkwy Apt 206 | Union City | GA | 30291 | Fulton |
| 737000 | 6370 Shannon Pkwy Apt 207 | Union City | GA | 30291 | Fulton |
| 737001 | 6370 Shannon Pkwy Apt 208 | Union City | GA | 30291 | Fulton |
| 737002 | 6370 Shannon Pkwy Apt 301 | Union City | GA | 30291 | Fulton |
| 737003 | 6370 Shannon Pkwy Apt 302 | Union City | GA | 30291 | Fulton |
| 737004 | 6370 Shannon Pkwy Apt 303 | Union City | GA | 30291 | Fulton |

3

Deed to Secure Debt (Georgia)

| 737005 | 6370 Shannon Pkwy Apt 304 | Union City | GA | 30291 | Fulton |
| 737006 | 6370 Shannon Pkwy Apt 305 | Union City | GA | 30291 | Fulton |
| 737007 | 6370 Shannon Pkwy Apt 306 | Union City | GA | 30291 | Fulton |
| 737008 | 6370 Shannon Pkwy Apt 307 | Union City | GA | 30291 | Fulton |
| 736901 | 6370 Shannon Pkwy Apt 308 | Union City | GA | 30291 | Fulton |
| 737009 | 6370 Shannon Pkwy Apt 401 | Union City | GA | 30291 | Fulton |
| 737010 | 6370 Shannon Pkwy Apt 402 | Union City | GA | 30291 | Fulton |
| 737011 | 6370 Shannon Pkwy Apt 403 | Union City | GA | 30291 | Fulton |
| 737012 | 6370 Shannon Pkwy Apt 404 | Union City | GA | 30291 | Fulton |
| 737013 | 6370 Shannon Pkwy Apt 405 | Union City | GA | 30291 | Fulton |
| 737014 | 6370 Shannon Pkwy Apt 406 | Union City | GA | 30291 | Fulton |
| 737015 | 6370 Shannon Pkwy Apt 501 | Union City | GA | 30291 | Fulton |
| 737016 | 6370 Shannon Pkwy Apt 502 | Union City | GA | 30291 | Fulton |
| 737017 | 6370 Shannon Pkwy Apt 503 | Union City | GA | 30291 | Fulton |
| 737018 | 6370 Shannon Pkwy Apt 504 | Union City | GA | 30291 | Fulton |
| 736902 | 6370 Shannon Pkwy Apt 505 | Union City | GA | 30291 | Fulton |
| 737019 | 6370 Shannon Pkwy Apt 506 | Union City | GA | 30291 | Fulton |
| 737020 | 6370 Shannon Pkwy Apt 507 | Union City | GA | 30291 | Fulton |
| 737021 | 6370 Shannon Pkwy Apt 508 | Union City | GA | 30291 | Fulton |
| 737022 | 6370 Shannon Pkwy Apt 601 | Union City | GA | 30291 | Fulton |
| 737023 | 6370 Shannon Pkwy Apt 602 | Union City | GA | 30291 | Fulton |
| 737024 | 6370 Shannon Pkwy Apt 603 | Union City | GA | 30291 | Fulton |
| 737025 | 6370 Shannon Pkwy Apt 604 | Union City | GA | 30291 | Fulton |
| 736903 | 6370 Shannon Pkwy Apt 605 | Union City | GA | 30291 | Fulton |
| 736904 | 6370 Shannon Pkwy Apt 606 | Union City | GA | 30291 | Fulton |
| 736905 | 6370 Shannon Pkwy Apt 607 | Union City | GA | 30291 | Fulton |
| 736906 | 6370 Shannon Pkwy Apt 608 | Union City | GA | 30291 | Fulton |
| 736907 | 6370 Shannon Pkwy Apt 701 | Union City | GA | 30291 | Fulton |
| 736908 | 6370 Shannon Pkwy Apt 702 | Union City | GA | 30291 | Fulton |
| 736891 | 6370 Shannon Pkwy Apt 703 | Union City | GA | 30291 | Fulton |
| 736909 | 6370 Shannon Pkwy Apt 704 | Union City | GA | 30291 | Fulton |
| 736910 | 6370 Shannon Pkwy Apt 705 | Union City | GA | 30291 | Fulton |
| 736911 | 6370 Shannon Pkwy Apt 706 | Union City | GA | 30291 | Fulton |
| 736912 | 6370 Shannon Pkwy Apt 801 | Union City | GA | 30291 | Fulton |
| 736913 | 6370 Shannon Pkwy Apt 802 | Union City | GA | 30291 | Fulton |
| 736914 | 6370 Shannon Pkwy Apt 803 | Union City | GA | 30291 | Fulton |
| 736915 | 6370 Shannon Pkwy Apt 804 | Union City | GA | 30291 | Fulton |
| 736916 | 6370 Shannon Pkwy Apt 805 | Union City | GA | 30291 | Fulton |
| 736917 | 6370 Shannon Pkwy Apt 806 | Union City | GA | 30291 | Fulton |
| 736918 | 6370 Shannon Pkwy Apt 807 | Union City | GA | 30291 | Fulton |
| 736892 | 6370 Shannon Pkwy Apt 808 | Union City | GA | 30291 | Fulton |
| 736919 | 6370 Shannon Pkwy Apt 809 | Union City | GA | 30291 | Fulton |
| 736920 | 6370 Shannon Pkwy Apt 901 | Union City | GA | 30291 | Fulton |

4

| 736921 | 6370 Shannon Pkwy Apt 902 | Union City | GA | 30291 | Fulton |
|---|---|---|---|---|---|
| 736922 | 6370 Shannon Pkwy Apt 903 | Union City | GA | 30291 | Fulton |
| 736923 | 6370 Shannon Pkwy Apt 904 | Union City | GA | 30291 | Fulton |
| 736924 | 6370 Shannon Pkwy Apt 905 | Union City | GA | 30291 | Fulton |
| 736925 | 6370 Shannon Pkwy Apt 906 | Union City | GA | 30291 | Fulton |
| 736926 | 6370 Shannon Pkwy Apt 907 | Union City | GA | 30291 | Fulton |
| 736927 | 6370 Shannon Pkwy Apt 908 | Union City | GA | 30291 | Fulton |
| 736928 | 6370 Shannon Pkwy Apt 909 | Union City | GA | 30291 | Fulton |
| 736893 | 6370 Shannon Pkwy Apt 910 | Union City | GA | 30291 | Fulton |
| 736990 | 6370 Shannon Pkwy Leasing Office 1 | Union City | GA | 30291 | Fulton |
| 736991 | 6370 Shannon Pkwy Leasing Office 2 | Union City | GA | 30291 | Fulton |
| 736988 | 6370 Shannon Pkwy Unit 99 (Laundry) | Union City | GA | 30291 | Fulton |

5

Deed to Secure Debt (Georgia)

## EXHIBIT A

Legal Description

Address: 6370 Shannon Parkway Units 1-136, Union City, GA  30291
County: Fulton
Parcel Identification Number: 09F-1504-0078-054-8 and 09F-1504-0078-055-5
Client Code: SHANNON-WOODS-01

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Union City, in the County of Fulton, in the State of Georgia.

All that tract or parcel of land lying and being in Land Lot 78, of the 9F District, in the City of Union City, of Fulton County, Georgia and being more particularly described as follows:

Commence at the right-of-way intersection of the Northern right-of-way of Shannon Boulevard (50' R/W) and the Eastern right-of-way of Shannon Parkway (80' R/W); thence in a Northeasterly direction along the Eastern right-of-way of Shannon Parkway 300.00 feet to a 1/2" rebar set and the True Point of Beginning; thence, continuing along said right-of-way, North 01 degrees 38 minutes 16 seconds East, a distance of 325.42 feet to a 1/2" rebar set; thence, leaving said right-of-way, South 88 degrees 30 minutes 42 seconds East, a distance of 231.28 feet to a 1/2" rebar found; thence North 68 degrees 50 minutes 58 seconds East, a distance of 291.05 feet to a 1/2" rebar set; thence South 49 degrees 18 minutes 09 seconds East, a distance of 37.06 feet to a 1/2" rebar set; thence North 38 degrees 14 minutes 07 seconds East, a distance of 130.22 feet to a 5/8" rebar found; thence South 48 degrees 19 minutes 14 seconds East, a distance of 595.94 feet to a 1/2" rebar found; thence South 01 degrees 41 minutes 25 seconds West, a distance of 416.00 feet to a 1/2" rebar set on the Northern right-of-way of Shannon Boulevard (50' R/W); thence, along the Northern right-of-way of Shannon Boulevard, the following two (2) calls: Thence running, along the arc of a curve to the left, an arc distance of 363.82 feet (having a radius of 43425.53' subtended by a chord bearing of North 89 degrees 17 minutes 15 seconds West, and a chord distance of 363.82 feet) to a point; thence North 89 degrees 24 minutes 37 seconds West, a distance of 99.39 feet to a rebar set; thence, leaving said right- of-way, North 00 degrees 14 minutes 54 seconds East, a distance of 199.96 feet to a 1/2" rebar found; thence North 89 degrees 36 minutes 11 seconds West, a distance of 394.62 feet to a 1/2" rebar set; thence North 01 degrees 40 minutes 15 seconds East, a distance of 100.00 feet to a 1/2" rebar found; thence North 89 degrees 34 minutes 25 seconds West, a distance of 199.98 feet to a 1/2" rebar set on the Eastern right-of-way of Shannon Parkway (80' R/W), and being the True Point of Beginning.

*** 

Exhibit A    Deed to Secure Debt (Fulton County, Georgia)