# EXHIBIT I



BRYAN CAVE LEIGHTON PAISNER LLP
One Atlantic Center 14th Floor
1201 W Peachtree St NW
Atlanta GA 30309 3471
T: +1 404 572 6600
F: +1 404 572 6999
bclplaw.com

Bob Stupar
Partner
Direct: +1 404 317 8102
Fax: +1 404 572 6999
bob.stupar@bclplaw.com

July 3, 2024

**VIA FEDERAL EXPRESS,**
**AND CERTIFIED MAIL, RETURN RECEIPT**
**REQUESTED AND ELECTRONIC MAIL**
KPM Investment A 2 LLC
123 Taaffe Place
Brooklyn, New York 11211
Attn: Joseph Perlmutter
Email: JPerlmutter@bmgaproperties.com

**VIA FEDERAL EXPRESS,**
**AND CERTIFIED MAIL, RETURN RECEIPT**
**REQUESTED AND ELECTRONIC MAIL**
KPM Investment A 2 LLC
123 Taaffe Place
Brooklyn, New York 11205
Attn: Joseph Perlmutter
Email: JPerlmutter@bmgaproperties.com

**VIA FEDERAL EXPRESS,**
**AND CERTIFIED MAIL, RETURN RECEIPT**
**REQUESTED AND ELECTRONIC MAIL**
KPM Investment A 2 LLC
6370 Shannon Parkway
Union City, Georgia 30291
Attn: Joseph Perlmutter
Email: JPerlmutter@bmgaproperties.com

**RE:**    That certain loan originally made to KPM INVESTMENT A 2 LLC, a Delaware limited liability company ("**Borrower**") by COREVEST AMERICAN FINANCE LENDER LLC, a Delaware limited liability company ("**Original Lender**") in the original principal amount of $9,450,000.00 (the "**Loan**"), as evidenced by, among other documents, that certain Loan Agreement dated as of October 29, 2021 (the "**Loan Origination Date**"), between Borrower and Original Lender (the "**Loan Agreement**") and by that certain Promissory Note dated as of the Loan Origination Date, executed by Borrower and payable to the order of Original Lender in the original principal amount of $9,450,000.00 (the "**Note**"), and secured by that certain first priority Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of the Loan Origination Date, recorded on November 4, 2021, in Deed Book 64770, Page 174, with the Clerk



KPM Investment A 2 LLC
July 3, 2024
Page 2

of the Superior Court of Fulton County, Georgia, executed by Borrower in favor of Original Lender (the "**Security Instrument**") and encumbering, among other things, the property further described in the Security Instrument, as said Loan was subsequently assigned, sold, transferred and delivered to U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR HOMES MORTGAGE TRUST ("**Lender**"), and as said Loan was guaranteed by KPM INVESTMENT B 2 LLC, a Delaware limited liability company ("**Pledgor**") pursuant to that certain Pledgor Guaranty dated as of the Loan Origination Date, by Pledgor in favor of Original Lender (the "**Pledgor Guaranty**") and by JOSEPH PERLMUTTER, an individual resident of the State of New York, and ISAAC PERLMUTTER, an individual resident of the State of New York (together with his, her, its or their respective heirs, executors, administrators, personal representatives and permitted successors and assigns, collectively, "**Sponsor**" and together with Pledgor, each a "**Guarantor**" and collectively, the "**Guarantors**") pursuant to that certain Sponsor Guaranty dated as of the Loan Origination Date, by Sponsor in favor of Original Lender (the "**Sponsor Guaranty**"); the Loan Agreement, the Note, the Security Instrument, the Pledgor Guaranty, the Sponsor Guaranty, and all other documents and agreements executed in connection with the Loan are collectively referred to herein as the "**Loan Documents**."

Dear Borrower:

As you know, this firm acts as legal counsel to Lender, the current owner and holder of the Loan and the Loan Documents. That certain notice of default and foreclosure dated as of January 3, 2024, issued to you on behalf of the Lender by Lender's former counsel, Parker, Hudson, Rainer & Dobbs LLP, and those certain notices issued to you by this firm on March 14, 2024, March 15, 2024 and May 1, 2024 (collectively, the "**Notices of Default**") are incorporated herein by this reference. Capitalized terms used herein, but not defined herein, shall have the meanings ascribed thereto in the Loan Documents and the Notices of Default.

At Borrower's express request and promise to Lender that Borrower would cure the continuing Events of Default, Lender allowed Borrower to cure the monetary Events of Default by paying the Monetary Default Cure Amount no later than March 22, 2024. As of that same date, Borrower was requested to provide plans to Lender regarding the correction of the deteriorated condition of the Property. As of the date hereof, Borrower has failed to cure the pending Events of Default, pay the Monetary Default Cure Amount and provide any plans to the Lender regarding the correction of the deteriorated condition of the Property. Borrower's behavior continues to demonstrate a complete disregard for its financial obligations to Lender and the life and safety of the tenants at the Property.

Accordingly, the Loan is hereby accelerated and declared immediately due and payable in the entirety. Demand is hereby made for the immediate payment of the sum of Ten Million Three Hundred Thousand Seven Hundred Four and 83/100 Dollars ($10,300,704.83) (the "**Demand Amount**") due under the Loan Documents as of June 26, 2024, subject to the terms of this letter and calculated as follows:



KPM Investment A 2 LLC
July 3, 2024
Page 3

| | |
|---|---:|
| Outstanding principal balance of the Loan (as of 6/26/2024): | $9,188,512.62 |
| Accrued interest at Interest Rate (8/1/2023 – 6/30/2024): | $399,304.68 |
| Yield Maintenance Premium: | $277,411.19 |
| Custodial and administrative expenses: | $300.00 |
| Prior accrued interest at Default Rate: | $201,713.97 |
| Account and deferred unpaid billings: | $74,306.67 |
| Accrued interest at Default Rate (9/8/2023 – 6/27/2024): | $386,349.11 |
| Late charges: | $59,596.55 |
| Outstanding escrow advances: | $12,968.97 |
| Subtotal | $10,600,463.76 |
| Less:   Escrows and reserves: | ($299,758.93) |
| **Demand Amount:** | **$10,300,704.83** |

From and after the dates noted above, additional interest and other charges will continue to accrue on the outstanding principal balance of the Loan in accordance with the terms of the Loan Documents and until payment in full of the Debt is received by Lender in good and immediately available funds. Lender reserves the right to supplement the Demand Amount with additional charges and/or credits not reflected above but which may be appropriate pursuant to the terms of the Loan Documents. Upon request by Borrower specifying the date on which payment of the entire Debt will be received by Lender, Lender will provide Borrower with the updated Demand Amount.

Please note that Lender has commenced a foreclosure action. In connection with said upcoming foreclosure upon the security for the Loan, and pursuant to Official Code of Georgia Annotated §44-14-162.2, please find enclosed a copy of the foreclosure Notice of Sale Under Power that will be published during the month of July 2024 in *The South Fulton Neighbor*, the legal organ of Fulton County, Georgia. The name, address and telephone number of the entity that has authority to negotiate, amend, and modify the terms of the Loan Documents, is as follows:

CoreVest Purchaser 2, LLC
4 Park Plaza, Suite 900
Irvine, CA 92614
Attn: Matt Kim
Telephone: 949-861-7726

Lender reserves the right to exercise, in such order as Lender elects, any one or more of the other rights and remedies available to Lender under the Loan Documents or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Please be further advised that no past or future acceptance of partial payments, delay or omission



KPM Investment A 2 LLC
July 3, 2024
Page 4

in the exercise of any right or remedy accruing to Lender as a result of any default or any Event of Default under any of the Loan Documents was or is intended to constitute, or shall be deemed to constitute, a waiver of any right or remedy accruing to Lender as a result of that default or any other default or that Event of Default or any other Event of Default. Payment to Lender in an amount less than the entire amount of the outstanding Debt, together with all other amounts due under the Loan Documents, should not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount as payment in full of the entire outstanding Debt. Neither this letter nor any statement by or on behalf of Lender as to the amount due and owing under the any of the Loan Documents: (i) shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity; or (ii) shall constitute an offer to settle or waive any rights of Lender under any of the Loan Documents.

Pursuant to Section 13-1-11 of the Official Code of Georgia Annotated, Borrower is hereby notified that the provisions contained in the Loan Documents relative to the payment of Lender's attorneys' fees will be enforced unless you pay the Debt within ten (10) days after your receipt of this letter. If Borrower makes such payment in full of the Debt within ten (10) days from the date of Borrower's receipt of this letter, the provisions in the Loan Documents obligating you to pay Lender's attorneys' fees will not be enforced. Additionally, from and after the date of the occurrence of the first Event of Default, Borrower's license to collect the rents and other sums granted under the Loan Documents was automatically terminated. Rents, if any, so collected by Borrower, or any of its agents, shall not be commingled with the funds of Borrower, shall be held in trust for Lender, and shall be immediately turned over to Lender.

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and information purposes only, and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)11, if applicable.

You are hereby notified that Lender shall strictly enforce the Loan Documents in accordance with their respective terms.

Sincerely,

Bob Stupar, Esq.

Encl.

cc:      Blaivas & Associates, P.C.
         1430 Broadway, Suite 1603
         New York, New York 10018
         Attn: David Rosenbaum, Esq.
         Email: drosenbaum@blpclaw.com
         (*via overnight carrier; certified mail, return receipt requested; electronic mail*)



KPM Investment A 2 LLC
July 3, 2024
Page 5

KPM Investment B 2 LLC
123 Taaffe Place
Brooklyn, New York 11211
Attn: Joseph Perlmutter
Email: JPerlmutter@bmgaproperties.com
(*via overnight carrier; certified mail, return receipt requested; electronic mail*)

Joseph Perlmutter and Isaac Perlmutter
123 Taaffe Place
Brooklyn, New York 11211
Attn: Joseph Perlmutter
Email: JPerlmutter@bmgaproperties.com
(*via overnight carrier; certified mail, return receipt requested; electronic mail*)

Jonathan Kohan (via email at jonathan.kohan@cvest.com)

Matt Kim (via email at Matt.Kim@cvest.com)
Curtis Romig, Esq. (via email at Curtis.Romig@bclplaw.com)
Mustafa Ahmed, Esq. (via email at Mustafa.Ahmed@bclplaw.com)
S. Joshua Kahane, Esq. (via email at Jkahane@glankler.com)

**STATE OF GEORGIA**

**COUNTY OF FULTON**

<u>**NOTICE OF SALE UNDER POWER**</u>

**WHEREAS**, KPM Investment A 2 LLC, a Delaware limited liability company ("***Borrower***"), executed and delivered to CoreVest American Finance Lender LLC, a Delaware limited liability company ("***Original Lender***"), that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of October 29, 2021, filed and recorded November 4, 2021, in Deed Book 64770, Page 174, with the Clerk of the Superior Court of Fulton County, Georgia (the "***Fulton County Records***"), as endorsed, assigned, sold, transferred and delivered by Original Lender to CoreVest Purchaser 2, LLC, a Delaware limited liability company ("***First Interim Holder***") pursuant to that certain Assignment of Security Instrument, dated as of October 29, 2021, filed and recorded December 13, 2021, in Deed Book 64972, Page 105, in the Fulton County Records, as further endorsed, assigned, sold, transferred and delivered by First Interim Holder to CAF Borrower GS LLC, a Delaware limited liability company ("***Second Interim Holder***") pursuant to that certain Assignment of Security Instrument, dated as of October 29, 2021, filed and recorded December 13, 2021, in Deed Book 64972, Page 115, in the Fulton County Records, as further endorsed, assigned, sold, transferred and delivered by Second Interim Holder to U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for Homes Mortgage Trust ("***Holder***") pursuant to that certain Assignment of Security Instrument, dated as of December 20, 2023, filed and recorded December 20, 2023, in Deed Book 67452, Page 559, in the Fulton County Records (said Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing as so assigned being hereinafter called the "***Security Instrument***"); and

**WHEREAS**, under and pursuant to the Security Instrument, Borrower did thereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Holder (as subsequent successor and assign of Original Lender), and to its successors and assigns, with power of sale, as security for the Debt (as defined in the Security Instrument and that certain Loan Agreement, dated as of October 29, 2021, between Borrower and Original Lender, the "***Loan Agreement***"), the security title to, all right, title, interest and estate of Borrower then owned, or thereafter acquired by Borrower, in and to the following (collectively, the "***Property***"):

      (a)    <u>Land</u>.  The real property described as follows (the "***Land***"):

Address:  **6370 Shannon Parkway Units 1-136, Union City, GA 30291**
County:  **Fulton**
Parcel Identification Number:  **09F-1504-0078-054-8 and 09F-1504-0078-055-5**
Client Code:  **SHANNON-WOODS-01**

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Union City, in the County of Fulton, in the State of Georgia.

All that tract or parcel of land lying and being in Land Lot 78, of the 9F District, in the City of Union City, of Fulton County, Georgia and being more particularly described as follows:

Commence at the right-of-way intersection of the Northern right-of-way of Shannon Boulevard (50' R/W) and the Eastern right-of-way of Shannon Parkway (80' R/W); thence in a Northeasterly direction along the Eastern right-of-way of Shannon Parkway 300.00 feet to a 1/2" rebar set and the True Point of Beginning; thence, continuing along said right-of-way, North 01 degrees 38 minutes 16 seconds East, a distance of 325.42 feet to a 1/2" rebar set; thence, leaving said right-of-way, South 88 degrees 30 minutes 42 seconds East, a distance of 231.28 feet to a 1/2" rebar found; thence North 68 degrees 50 minutes 58 seconds East,

615269177.3

a distance of 291.05 feet to a 1/2" rebar set; thence South 49 degrees 18 minutes 09 seconds East, a distance of 37.06 feet to a 1/2" rebar set; thence North 38 degrees 14 minutes 07 seconds East, a distance of 130.22 feet to a 5/8" rebar found; thence South 48 degrees 19 minutes 14 seconds East, a distance of 595.94 feet to a 1/2" rebar found; thence South 01 degrees 41 minutes 25 seconds West, a distance of 416.00 feet to a 1/2" rebar set on the Northern right-of-way of Shannon Boulevard (50' R/W); thence, along the Northern right-of-way of Shannon Boulevard, the following two (2) calls:  Thence running, along the arc of a curve to the left, an arc distance of 363.82 feet (having a radius of 43425.53' subtended by a chord bearing of North 89 degrees 17 minutes 15 seconds West, and a chord distance of 363.82 feet) to a point; thence North 89 degrees 24 minutes 37 seconds West, a distance of 99.39 feet to a rebar set; thence, leaving said right-of-way, North 00 degrees 14 minutes 54 seconds East, a distance of 199.96 feet to a 1/2" rebar found; thence North 89 degrees 36 minutes 11 seconds West, a distance of 394.62 feet to a 1/2" rebar set; thence North 01 degrees 40 minutes 15 seconds East, a distance of 100.00 feet to a 1/2" rebar found; thence North 89 degrees 34 minutes 25 seconds West, a distance of 199.98 feet to a 1/2" rebar set on the Eastern right-of-way of Shannon Parkway (80' R/W), and being the True Point of Beginning.

(b)     *Additional Land*.  All additional lands, estates and development rights thereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed to secure debt or otherwise be expressly made subject to the lien and security title of the Security Instrument;

(c)     *Improvements*.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements then or thereafter erected or located on the Land (collectively, the "***Improvements***");

(d)     *Easements*.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way then or thereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     *Equipment*.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), then owned or thereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment then owned or thereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "***Equipment***"). Notwithstanding the foregoing, Equipment shall not include any property belonging to Tenants under Leases except to the extent that Borrower shall have any right or interest therein;

(f)     *Fixtures*.  All Equipment then owned, or the ownership of which is thereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items then or thereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call

- 2 -

and sprinkler systems, fire extinguishing apparatuses and equipment, lighting, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "***Fixtures***").  Notwithstanding the foregoing, "Fixtures" shall not include any property which Tenants are entitled to remove pursuant to Leases except to the extent that Borrower shall have any right or interest therein;

(g)     Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, equipment, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code), other than Fixtures, which are then or thereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "***Personal Property***"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "***Uniform Commercial Code***"), superior in lien to the lien, security title and security interest of the Security Instrument, and all proceeds and products of any of the above. Notwithstanding the foregoing, Personal Property shall not include any property belonging to Tenants under Leases except to the extent that Borrower shall have any right or interest therein;

(h)     Leases and Rents.  (i) All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment, extension, renewal, replacement, or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, theretofore or thereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "***Bankruptcy Code***") (collectively, the "***Leases***"); (ii) all right, title and interest of Borrower, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "***Rents***"); (iii) all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment and performance of the Obligations, including the payment of the Debt; (iv) all of Borrower's right, title and interest in, and claims under, any and all lease guaranties, letters of credit and any other credit support (individually, a "***Lease Guaranty***", and collectively, the "***Lease Guaranties***") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "***Lease Guarantor***", and collectively, the "***Lease Guarantors***") to Borrower; (v) all rights, powers, privileges, options and other benefits of Borrower as the lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including, without limitation, the immediate and continuing right to make claims for, and to receive, collect and acknowledge receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things

- 3 -

which Borrower or any lessor is or may become entitled to do under any of the Leases or Lease Guaranties; (vi) the right, subject to the provisions of the Loan Agreement, at Borrower's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents; (vii) during the continuance of an Event of Default, Borrower's irrevocable power of attorney, coupled with an interest, to take any or all other actions designated by Holder for the proper management and preservation of the Land and Improvements; and (viii) any and all other rights of Borrower in and to the items set forth in subsections (i) through (vii) above, and all amendments, modifications, replacements, renewals and substitutions thereof;

(i)     Condemnation Awards.  All awards or payments, including interest thereon, which may theretofore and thereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)     Insurance Proceeds.  All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Property;

(k)     Tax Certiorari.  All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges assessed against the Property as a result of tax certiorari proceedings or any other applications or proceedings for reduction;

(l)     Rights.  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Holder in the Property;

(m)     Agreements.  All agreements, contracts, certificates, instruments, franchises, management agreements, permits, licenses, plans, specifications and other documents, then or thereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening and during the continuance of any Event of Default, to receive and collect any sums payable to Borrower thereunder;

(n)     Intellectual Property.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)     Accounts.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, together with all deposits or wire transfers made to such accounts, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time, and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof, excluding the following (the "*Account Collateral*"):  all reserves, escrows and deposit accounts in which a security interest is granted to Holder pursuant to the Loan Agreement and all amounts at any time contained therein and the proceeds thereof;

(p)     Uniform Commercial Code Property.  All documents, instruments, chattel paper and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, relating to the Property;

(q)     Minerals.  All minerals, crops, timber, trees, shrubs, flowers and landscaping features then or thereafter located on, under or above Land;

- 4 -

615269177.3

(r)    All Other Assets. All other accounts, general intangibles, instruments, investment property, documents, chattel paper, goods, moneys, letters of credit, letter of credit rights, certificates of deposit, deposit accounts, escrow deposits, commercial tort claims, oil, gas and minerals, and all other property and interests in property of Borrower, whether tangible or intangible, and including without limitation all of Borrower's claims and rights to the payment of damages arising under the Bankruptcy Code ("**Bankruptcy Claims**"), excluding the Account Collateral;

(s)    Proceeds. All proceeds of, and proceeds of any sale of, any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether in cash or in liquidation or other claims, or otherwise; and

(t)    Other Rights. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (s) above.

WHEREAS, the Security Instrument secures, in part, that certain loan (the "**Loan**") to Borrower made by Original Lender, in the total original principal amount of $9,450,000.00, as evidenced by that certain Promissory Note dated as of October 29, 2021, in the original principal amount of $9,450,000.00, executed by Borrower and payable to the order of Original Lender, as was endorsed and assigned to Holder (the "**Note**"); and

WHEREAS, defaults and Events of Default have occurred and are continuing under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents (as defined in the Loan Agreement), specifically including, without limitation, the failure of Borrower to pay to Holder the payments due under the Note; and

WHEREAS, by reason of such defaults and Events of Defaults, the Debt was and is hereby accelerated and declared due and payable in the entirety and the Security Instrument has become, is, and is hereby subject to foreclosure as provided by law, the Note, the Loan Agreement, and the Security Instrument; and

WHEREAS, prior to the consummation of the exercise of the power of sale contained in the Security Instrument and the consummation of the foreclosure sale of the Property, any and all funds, cash, letters of credit and other sums, if any, held by Holder for or on behalf of Borrower, in the reserves, or any other escrow, reserve or accounts established under the Note, the Loan Agreement, the Security Instrument and/or any other Loan Document, for payment of taxes, assessments and other similar charges levied against the Property, insurance, capital improvements, replacements, tenant improvements, leasing commissions or otherwise (collectively, the "**Funds**") have been or shall be applied by Holder toward payment of the Debt, to the extent provided in the Note, the Loan Agreement, the Security Instrument and the other Loan Documents.

NOW, THEREFORE, under and pursuant to the power of sale contained in the Security Instrument and according to the terms of the Security Instrument and the laws in such cases made and provided, Holder will expose the Property (less and except the Funds) for sale, at public sale to the highest bidder, for cash on that certain first Tuesday in August, 2024, being **AUGUST 6, 2024**, during the legal hours for sale, before the courthouse door in Fulton County, Georgia. The Property (less and except the Funds) will be sold subject to the following:

1.    All outstanding taxes and assessments, and any additional taxes which result from a reassessment of the Property;

2.    All valid zoning ordinances;

- 5 -

615269177.3

3.       Rights and obligations of tenants in possession as tenants only, with no option to purchase or right of first refusal;

4.       All other, if any, easements, limitations, reservations, covenants, restrictions, deeds to secure debt, liens and other encumbrances and matters of public records to which the Security Instrument is junior and subordinate in terms of priority under the laws of the State of Georgia; and

5.       Any and all other matters that a survey of the Property would reveal.

The Debt remaining in default and the aforesaid defaults and Events of Default continuing, the sale of the Property (less and except the Funds) under and pursuant to the power of sale contained in the Security Instrument will be made for the purpose of applying the proceeds thereof, as provided for in the Security Instrument and pursuant to applicable law.

The Property (less and except the Funds) will be sold on an "**as is, where is**" basis without recourse against Holder and without representation or warranty of any kind or nature whatsoever with respect thereto, with no assurance afforded as to the exact acreage of the Land.

To the best of Holder's knowledge and belief, the Property (less and except the Funds) is presently owned by Borrower, subject to the aforesaid interests of Holder and the matters set forth herein, and Borrower is the party in possession of the Property (less and except the Funds), subject to the aforesaid interests.

The notice to Borrower, pursuant to O.C.G.A. §44-14-162.2, has been provided by Holder to Borrower in accordance with said O.C.G.A. §44-14-162.2.

The undersigned may sell the Property (less and except the Funds) or any part of the Property (less and except the Funds) in such manner and order as Holder may elect and may sell that portion of the Property (less and except the Funds), which, under the laws of the State of Georgia, constitutes an estate or interest in real estate separately from that portion of the Property (less and except the Funds), which, under the laws of the State of Georgia, constitutes personalty and not an interest in the real estate, in which case separate bids will be taken therefor, or collectively in a single sale or lot, in which case a single bid will be taken therefor or separately in separate sales or lots, in which case separate bids will be taken therefor. Notice of the undersigned's intent shall be given by announcement made at the commencement of the public sale.

The recitals set forth hereinabove are hereby incorporated in and made a part of this Notice of Sale Under Power.

U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for Homes Mortgage Trust

By:     its attorney-at-law:

*/Bob Stupar/*
Bob Stupar, Esq.
Bryan Cave Leighton Paisner LLP
One Atlantic Center 14th Floor, 1201 W. Peachtree St., N.W., Atlanta, GA 30309-3471
404-572-6600

- 6 -

615269177.3