# EXHIBIT O

Deed Book 68707 Pg  616
Filed and Recorded Mar-04-2025 01:09pm
2025-0075771
Real Estate Transfer Tax $0.00
CHE ALEXANDER
Clerk of Superior Court
Fulton County, Georgia

Tax Parcel ID Nos.:

09F-1504-0078-054-8
09F-1504-0078-055-5

Space Above For Recorder's Use

**AFTER RECORDING RETURN TO:**

Bryan Cave Leighton Paisner LLP
One Atlantic Center 14th Floor
1201 W. Peachtree St., N.W.
Atlanta, GA 30309-3471
Attention:  S. Bob Stupar, Esq.

**CROSS REFERENCE TO:**

Deed Book 64770, Page 174;
Deed Book 64972, Page 105;
Deed Book 64972, Page 115;
Deed Book 67452, Page 559,
Fulton County Records

**STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

## DEED UNDER POWER OF SALE

**THIS INDENTURE** is made effective as of this 4th day of March, 2025 by **KPM Investment A 2 LLC**, a Delaware limited liability company (hereinafter called "*Grantor*"), acting by and through its agent and attorney-in-fact, **U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for Homes Mortgage Trust ("*Holder*"), and U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for Homes Mortgage Trust** (hereinafter also called "*Grantee*").

## W I T N E S S E T H:

**WHEREAS**, Grantor executed and delivered to CoreVest American Finance Lender LLC, a Delaware limited liability company ("*Original Lender*"), that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of October 29, 2021, filed and recorded November 4, 2021, in Deed Book 64770, Page 174, with the Clerk of the Superior Court of Fulton County, Georgia (the "*Fulton County Records*"), as endorsed, assigned, sold, transferred and delivered by Original Lender to CoreVest Purchaser 2, LLC, a Delaware limited liability company ("*First Interim Holder*") pursuant to that certain Assignment

1

USA.615190904.3/6SM

Deed Book 68707 Pg 617

of Security Instrument, dated as of October 29, 2021, filed and recorded December 13, 2021, in Deed Book 64972, Page 105, in the Fulton County Records, as further endorsed, assigned, sold, transferred and delivered by First Interim Holder to CAF Borrower GS LLC, a Delaware limited liability company ("*Second Interim Holder*") pursuant to that certain Assignment of Security Instrument, dated as of October 29, 2021, filed and recorded December 13, 2021, in Deed Book 64972, Page 115, in the Fulton County Records, and as further endorsed, assigned, sold, transferred and delivered by Second Interim Holder to Holder pursuant to that certain Assignment of Security Instrument, dated as of December 20, 2023, filed and recorded December 20, 2023, in Deed Book 67452, Page 559, in the Fulton County Records  (said Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing as so assigned being hereinafter called the "*Security Instrument*"); and

**WHEREAS**, under and pursuant to the Security Instrument, Grantor did thereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Holder (as subsequent successor and assign of Original Lender) and its successors and assigns, with power of sale, the following property, rights, interests and estates, then owned or thereafter acquired by Grantor (collectively, the "*Property*"):

(a)      Land. The real property described as follows (the "*Land*"):

Address:  **6370 Shannon Parkway Units 1-136, Union City, GA 30291**
County: **Fulton**
Parcel Identification Number:  **09F-1504-0078-054-8 and 09F-1504-0078-055-5**
Client Code: **SHANNON-WOODS-01**

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Union City, in the County of Fulton, in the State of Georgia.

All that tract or parcel of land lying and being in Land Lot 78, of the 9F District, in the City of Union City, of Fulton County, Georgia and being more particularly described as follows:

Commence at the right-of-way intersection of the Northern right-of-way of Shannon Boulevard (50' R/W) and the Eastern right-of-way of Shannon Parkway (80' R/W); thence in a Northeasterly direction along the Eastern right-of-way of Shannon Parkway 300.00 feet to a 1/2" rebar set and the True Point of Beginning; thence, continuing along said right-of-way, North 01 degrees 38 minutes 16 seconds East, a distance of 325.42 feet to a 1/2" rebar set; thence, leaving said right-of-way, South 88 degrees 30 minutes 42 seconds East, a distance of 231.28 feet to a 1/2" rebar found; thence North 68 degrees 50 minutes 58 seconds East, a distance of 291.05 feet to a 1/2" rebar set; thence South 49 degrees 18 minutes 09 seconds East, a distance of 37.06 feet to a 1/2" rebar set; thence North 38 degrees 14 minutes 07 seconds East, a distance of 130.22 feet to a 5/8" rebar found; thence South 48 degrees 19 minutes 14 seconds East, a distance of 595.94 feet to a 1/2" rebar found; thence South 01 degrees 41 minutes 25 seconds West, a distance of 416.00 feet to a 1/2" rebar set on the Northern right-of-way of Shannon Boulevard (50' R/W); thence, along the Northern right-of-way of Shannon Boulevard, the following two (2) calls: Thence running, along the arc of a curve to the left, an arc distance of 363.82 feet (having a radius of 43425.53' subtended by a chord bearing of North 89 degrees 17 minutes 15 seconds West, and a chord distance of 363.82 feet) to a point; thence North 89 degrees 24 minutes 37 seconds West, a distance of 99.39 feet to a rebar set; thence, leaving said right-of-way, North 00

2

USA.615190904.3/6SM

degrees 14 minutes 54 seconds East, a distance of 199.96 feet to a 1/2" rebar found; thence North 89 degrees 36 minutes 11 seconds West, a distance of 394.62 feet to a 1/2" rebar set; thence North 01 degrees 40 minutes 15 seconds East, a distance of 100.00 feet to a 1/2" rebar found; thence North 89 degrees 34 minutes 25 seconds West, a distance of 199.98 feet to a 1/2" rebar set on the Eastern right-of-way of Shannon Parkway (80' R/W), and being the True Point of Beginning.

(b)     Additional Land.  All additional lands, estates and development rights thereafter acquired by Grantor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed to secure debt or otherwise be expressly made subject to the lien and security title of the Security Instrument;

(c)     Improvements.     The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements then or thereafter erected or located on the Land (collectively, the "*Improvements*");

(d)     Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way then or thereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Grantor of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     Equipment.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), then owned or thereafter acquired by Grantor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment then owned or thereafter acquired by Grantor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "*Equipment*"). Notwithstanding the foregoing, Equipment shall not include any property belonging to Tenants under Leases except to the extent that Grantor shall have any right or interest therein;

(f)     Fixtures.  All Equipment then owned, or the ownership of which is thereafter acquired, by Grantor which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items then or thereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to,

3

USA.615190904.3/6SM

Deed Book 68707 Pg 619

engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, lighting, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Grantor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "*Fixtures*"). Notwithstanding the foregoing, "Fixtures" shall not include any property which Tenants are entitled to remove pursuant to Leases except to the extent that Grantor shall have any right or interest therein;

     (g)    Personal Property. All furniture, furnishings, objects of art, machinery, goods, tools, equipment, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code), other than Fixtures, which are then or thereafter owned by Grantor and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "*Personal Property*"), and the right, title and interest of Grantor in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "*Uniform Commercial Code*"), superior in lien to the lien, security title and security interest of the Security Instrument, and all proceeds and products of any of the above. Notwithstanding the foregoing, Personal Property shall not include any property belonging to Tenants under Leases except to the extent that Grantor shall have any right or interest therein;

     (h)    Leases and Rents. (i) All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment, extension, renewal, replacement, or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, theretofore or thereafter entered into, whether before or after the filing by or against Grantor of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "*Bankruptcy Code*") (collectively, the "*Leases*"); (ii) all right, title and interest of Grantor, its successors and assigns, therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements, whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code (collectively, the "*Rents*"); (iii) all proceeds from

4

the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment and performance of the Obligations, including the payment of the Debt; (iv) all of Grantor's right, title and interest in, and claims under, any and all lease guaranties, letters of credit and any other credit support (individually, a "*Lease Guaranty*", and collectively, the "*Lease Guaranties*") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "*Lease Guarantor*", and collectively, the "*Lease Guarantors*") to Grantor; (v) all rights, powers, privileges, options and other benefits of Grantor as the lessor under any of the Leases and the beneficiary under any of the Lease Guaranties, including, without limitation, the immediate and continuing right to make claims for, and to receive, collect and acknowledge receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Grantor or any lessor is or may become entitled to do under any of the Leases or Lease Guaranties; (vi) the right, subject to the provisions of that certain Loan Agreement, dated as of October 29, 2021, between Grantor and Original Lender (the "*Loan Agreement*"), at Holder's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents; (vii) during the continuance of an Event of Default, Grantor's irrevocable power of attorney, coupled with an interest, to take any or all other actions designated by Holder for the proper management and preservation of the Land and Improvements; and (viii) any and all other rights of Grantor in and to the items set forth in subsections (i) through (vii) above, and all amendments, modifications, replacements, renewals and substitutions thereof;

(i)     Condemnation Awards.   All awards or payments, including interest thereon, which may theretofore and thereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)     Insurance Proceeds.   All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Property;

(k)     Tax Certiorari.   All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges assessed against the Property as a result of tax certiorari proceedings or any other applications or proceedings for reduction;

(l)     Rights.   The right, in the name and on behalf of Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Holder in the Property;

(m)     Agreements.   All agreements, contracts, certificates, instruments, franchises, management agreements, permits, licenses, plans, specifications and other documents, then or thereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Grantor therein and thereunder, including,

5

USA.615190904.3/6SM

Deed Book 68707 Pg 621

without limitation, the right, upon the happening and during the continuance of any Event of Default, to receive and collect any sums payable to Grantor thereunder;

(n)   Intellectual Property.   All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, URLs or other online media, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)   Accounts.   All reserves, escrows and deposit accounts maintained by Grantor with respect to the Property, together with all deposits or wire transfers made to such accounts, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time, and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof, excluding the following (the "*Account Collateral*"): all reserves, escrows and deposit accounts in which a security interest is granted to Holder pursuant to the Loan Agreement and all amounts at any time contained therein and the proceeds thereof;

(p)   Uniform Commercial Code Property.   All documents, instruments, chattel paper and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, relating to the Property;

(q)   Minerals.   All minerals, crops, timber, trees, shrubs, flowers and landscaping features then or thereafter located on, under or above Land;

(r)   All Other Assets.   All other accounts, general intangibles, instruments, investment property, documents, chattel paper, goods, moneys, letters of credit, letter of credit rights, certificates of deposit, deposit accounts, escrow deposits, commercial tort claims, oil, gas and minerals, and all other property and interests in property of Grantor, whether tangible or intangible, and including without limitation all of Grantor's claims and rights to the payment of damages arising under the Bankruptcy Code ("*Bankruptcy Claims*"), excluding the Account Collateral;

(s)   Proceeds.   All proceeds of, and proceeds of any sale of, any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether in cash or in liquidation or other claims, or otherwise; and

(t)   Other Rights.   Any and all other rights of Grantor in and to the items set forth in Subsections (a) through (s) above.

WHEREAS, the Security Instrument secures, in part, that certain Promissory Note dated as of October 29, 2021, in the original principal amount of $9,450,000.00, executed by Grantor and payable to the order of Original Lender (the "*Note*"), as such Note was subsequently endorsed and assigned to Holder, and the other obligations under the Note, the Security Instrument and the other documents and instruments evidencing, securing or otherwise relating to the indebtedness evidenced and secured thereby; and

WHEREAS, defaults and Events of Default occurred and were continuing under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents (as defined in

6

USA.615190904.3/6SM

Deed Book 68707 Pg 622

the Loan Agreement), specifically including, without limitation, the failure of Grantor to pay to Holder the payments due under the Note; and

**WHEREAS**, by reason of such defaults and Events of Defaults, the Debt (as defined in the Loan Agreement) was accelerated and became due and payable in the entirety and the Security Instrument became and was thereby subject to foreclosure as provided by law, the Note, the Loan Agreement, and the Security Instrument; and

**WHEREAS**, prior to the consummation of the exercise of the power of sale contained in the Security Instrument and the consummation of the foreclosure sale of the Property, any and all funds, cash, letters of credit and other sums, if any, held by Holder for or on behalf of Grantor, in the reserves, or any other escrow, reserve or accounts established under the Note, the Loan Agreement, the Security Instrument and/or any other Loan Document, for payment of taxes, assessments and other similar charges levied against the Property, insurance, capital improvements, replacements, tenant improvements, leasing commissions or otherwise (collectively, the "*Funds*") have been or shall be applied by Holder toward payment of the Debt, to the extent provided in the Note, the Loan Agreement, the Security Instrument and the other Loan Documents; and

**WHEREAS**, in accordance with the power of sale contained in the Security Instrument and according to the terms of the Security Instrument and the laws in such cases made and provided, the Property (less and except the Funds) was advertised for sale once a week for four (4) consecutive weeks immediately preceding the week of the sale, the advertisement being contained in the *South Fulton Neighbor*, a newspaper published in Fulton County, Georgia, in which advertisements of sheriff's sales are published, and the advertisement so published on February 5, 2025, February 12, 2025, February 19, 2025 and February 26, 2025, recited notice of the time, place and terms of such sale; and

**WHEREAS**, Grantor, acting by and through Holder as Grantor's agent and attorney-in-fact, sold the Property (less and except the Funds) which is real property under the laws of the State of Georgia (collectively, the "*Real Property*") at public sale before the courthouse door in Fulton County, Georgia (the same being the usual place for conducting such sales at said courthouse), on that certain first Tuesday in March, 2025, being March 4, 2025, at _12_ :_52_ p.m o'clock a.m./p.m, during the legal hours for sales; and

**WHEREAS**, at such time and place and on such day Grantee was the highest bidder for the Real Property, having bid for the Real Property the sum of _Seven Million Two-Hundred Fifty Thousand + ⁿᵒ/₁₀₀_ Dollars ($_7,250,000. ⁿᵒ/₁₀₀_) and the Real Property was thereupon knocked down and sold to Grantee for such amount.

**NOW THEREFORE**, for and in consideration of the sums bid at public auction, in hand paid at and before the sealing and delivery of this indenture, the receipt of which is hereby acknowledged by Grantor, Grantor, acting by and through Holder as Grantor's agent and attorney-in-fact, hereby sells, grants, conveys, assigns and transfers all of Grantor's right, title, interest and equity in and to the Real Property unto Grantee.

7

USA.615190904.3/6SM

Deed Book 68707 Pg 623

**TO HAVE AND TO HOLD** the Real Property, together with all and singular rights, members and appurtenances thereof, to the Real Property being, belonging or in anywise appertaining to the only proper use, benefit and behoof of Grantee, and Grantee's successors and assigns, forever, in fee simple, subject to:

1.     All outstanding taxes and assessments, and any additional taxes which result from a reassessment of the Property;

2.     All valid zoning ordinances;

3.     Rights and obligations of tenants in possession as tenants only, with no option to purchase or right of first refusal;

4.     All other, if any, easements, limitations, reservations, covenants, restrictions, deeds to secure debt, liens and other encumbrances and matters of public records to which the Security Instrument is junior and subordinate in terms of priority under the laws of the State of Georgia; and

5.     Any and all other matters that a survey of the Property would reveal.

The Debt remaining in default and the aforesaid defaults and Events of Default continuing, the sale of the Real Property under and pursuant to the power of sale contained in the Security Instrument was made for the purpose of applying the proceeds thereof, as provided for in the Security Instrument and pursuant to applicable law.

To the best of Holder's knowledge and belief, the Real Property is presently owned by Grantor, subject to the aforesaid interests of Holder, and the matters set forth herein, and Grantor is the party in possession of the Real Property, subject to the aforesaid interests.

The notice to Grantor, pursuant to O.C.G.A. §44-14-162.2, was provided by Holder to Grantor in accordance with said O.C.G.A. §44-14-162.2.

The recitals set forth above in this Deed Under Power of Sale are hereby incorporated by reference and made a part of this Deed Under Power of Sale.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

8

USA.615190904.3/6SM

Deed Book 68707 Pg 624

**IN WITNESS WHEREOF**, this Deed Under Power of Sale has been duly signed under seal and delivered by Grantor, acting by and through Holder as Grantor's agent and attorney-in-fact, all on the day, month and year first set forth above.

**GRANTOR:**

**U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for Homes Mortgage Trust**, as agent and attorney-in-fact for **KPM Investment A 2 LLC**, a Delaware limited liability company

By:    CoreVest Purchaser 2, LLC, a Delaware limited liability company

By:_____(SEAL)
Name:     Micaela M. Lumpkin
Title:      Chief Credit Officer

Signed, sealed and delivered
in the presence of:

_____  — Briana Haase
Unofficial Witness

[Acknowledgement on following page]

USA.615190904.3/6SM

CALIFORNIA NOTARY ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Orange

On March 3rd, 2025, before me, Christopher Terranova, Notary Public, personally appeared Micaela M. Lumpkin, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
CHRISTOPHER TERRANOVA
Notary Public - California
Orange County
Commission # 2415103
My Comm. Expires Sep 25, 2026
```

Signature: _____          (Seal)

```
Deed Book 68707 Pg 625
CHE ALEXANDER
Clerk of Superior Court
Fulton County, Georgia
```

USA.615190904.3/6SM